### LEWIS SIMONS v. HESTER McLAIN.

1. ESTATE *in Joint Tenancy—Abolition.* Prior to the time that chapter 203, Laws of 1891, went into force, "abolishing survivorship in joint tenancy," estates in joint tenancy, as recognized by the common law, existed in Kansas.

2. ——— *What Constitutes.* An estate in joint tenancy is an estate arising by purchase or grant to two or more persons. The grand incident of joint tenancy is survivorship, by which the entire tenancy on the decease of any joint tenant remains to the survivors, and at length to the last survivor.

*Error from Sedgwick District Court.*

THE facts on which are based the claims of Lewis Simons, the plaintiff, and Hester McLain, the defendant, are as follows: On the 17th day of May, 1872, and for more than one year prior thereto, Charles H. Hunter was the owner in fee

simple of the northeast quarter of the northeast quarter of section 28, township 27 south, of range 1 east of the sixth principal meridian, in Sedgwick county. On the 17th day of May, 1872, while still seized in fee simple of said lands, Hunter, a single man, executed and delivered to Lewis Simons and E. G. Tewksbury his warranty deed, dated that day, for the above-described lands. The following is a copy of said deed, omitting the certificate of acknowledgment, which was in due form:

"This deed, made this 17th day of May, in the year of our Lord 1872, between Charles H. Hunter (a single man), of Wichita, county of Sedgwick and state of Kansas, of the first part, and Lewis Simons and E. G. Tewksbury, of Hillsborough, and state of New Hampshire, of the second part, witnesseth, that the said party of the first part, for and in the consideration of the sum of $1,200, to him in hand paid by the said parties of the second part, the receipt whereof is hereby acknowledged, does by these presents grant, bargain, sell, remise, release, alien, convey and confirm unto the said party of the second part, and to their heirs and assigns forever, all of the following-described tract, piece and parcel of land, lying and situate in the county of Sedgwick and state of Kansas, to wit: The northeast one-quarter of the northeast one-quarter of section No. 28, in township No. 27 south, of range 1 east, containing 40 acres, more or less. [Stamp $1.50.] Together with all and singular the hereditaments and appurtenances thereunto belonging or in anywise appertaining: To have and to hold the same, unto the said parties of the second part, their heirs and assigns, forever. And the said Charles H. Hunter, for himself and his heirs, does hereby covenant and agree to and with the said parties of the second part, their heirs and assigns, that he will warrant and forever defend the same lands and appurtenances, and every part and parcel thereof, unto the said parties of the second part, their heirs and assigns, against the said party of the first part and his heirs, and against all and every person or persons whomsoever lawfully claiming or to claim the same.

"In testimony whereof, the said party of the first part has hereunto set his hand, the day and year first above written.

"Executed and delivered in the presence of C. A. Phillip.

CHARLES H. HUNTER. [Seal.]"

The deed was filed for record and recorded in the office of the register of deeds of Sedgwick county, in this state. On the 22d day of March, 1877, E. G. Tewksbury died, without having alienated the land or any part thereof during his lifetime. On the 28th of March, 1877, letters testamentary, with the will annexed, were issued to Submit R. Tewksbury, as executrix of the last will and testament of E. G. Tewksbury, deceased, by the probate court of Hillsborough county, New Hampshire, a court having jurisdiction of the estate of E. G. Tewksbury, deceased. On the 21st day of February, 1882, Submit R. Tewksbury filed in the office of the probate court of Sedgwick county a properly-authenticated copy of her appointment as executrix of said estate by the probate court of Hillsborough county, New Hampshire. She also filed her petition in the probate court of Sedgwick county, praying for an order to sell real estate to pay debts of E. G. Tewksbury, deceased. All the proper steps necessary for the execution of a deed in proper form by an executrix with the will annexed were observed, and Submit R. Tewksbury, on May 8, 1882, as executrix of the estate and last will and testament of E. G. Tewksbury, deceased, executed a deed for the undivided one-half of said lands to Henry Schweiter. On the 12th day of June, 1882, Lewis Simons and Mary Simons, his wife, executed and delivered to Henry Schweiter their warranty deed for an undivided one-half of said premises. The deed made by Lewis Simons was executed and delivered after the death of E. G. Tewksbury. Lewis Simons has made no other conveyance of said land. All the interest that Henry Schweiter acquired in the land described in the petition by virtue of said deeds has passed by sundry mesne conveyances from Henry Schweiter to Hester McLain, who claims to own, not only the undivided half of the land as described in the petition, but also the other undivided one-half, all of which is included in the tract conveyed by Charles H. Hunter to Lewis Simons and E. G. Tewksbury. The plaintiff claims to own the undivided one-half of the premises as set forth in the petition and not conveyed by him.

Lewis Simons, the plaintiff, commenced his action in the ordinary form of ejectment. Hester McLain, the defendant, answered by setting out in full the facts on which her title was based. The plaintiff demurred to this answer, as not alleging facts sufficient to constitute a defense. The court overruled the demurrer. The plaintiff elected to stand upon the demurrer, whereupon the court rendered judgment for the defendant. The plaintiff excepted, and brings the case here for review.

*Thornton W. Sargent,* for plaintiff in error:

When this court, in the case of *Baker v. Stewart,* 40 Kas. 442, held that a kindred estate, an estate by the entirety, existed in Kansas, it did not even have the existence of such estates recognized by statute, for nowhere in the statutes is an estate by the entirety mentioned until the act of March 10, 1891, was passed, and even then such an estate was mentioned only to abolish it. By passing the act of March 10, 1891, abolishing joint tenancies, the legislature impliedly admitted the previous existence of such estates.

If estates by joint tenancies never at all existed in Kansas, they never existed as to trust estates. Chapter 203 of the Laws of 1891, which abolished estates in joint tenancy, expressly excluded from the operation of that chapter trust estates. There is not a single decision by the supreme court holding that estates by joint tenancies do not exist, but, on the contrary, the cases of *Baker v. Stewart,* 40 Kas. 442, and *Shinn v. Shinn,* 42 id. 1, hold that a kindred estate, an estate by the entirety, exists in Kansas. The point decided in the case was that the right of survivorship exists. This same point was afterwards involved in the case of *Shinn v. Shinn,* and the court after careful deliberation sustained the decision in *Baker v. Stewart.*

At common law, there were only two incidents as to which estates by entirety differed from estates in joint tenancy: 1st. Estates by the entirety could not be destroyed or converted into tenancies in common by act of the parties, while estates

in joint tenancy could. 1 Washb. Real Prop., 5th ed., 706, 707; *Engeart v. Kepler,* 118 Ind. 34; 10 Am. Rep. 94, and note.    2d.    In estates by the entirety, the husband had the right to control the real estate so owned by him and his wife; but this distinction has been abolished by the statutes relating to married women.    See *Baker v. Stewart,* supra.

There was in Kansas, at the commencement of this suit, but one distinction between the two estates, and that was that estates in entirety could not, while estates in joint tenancy could, be destroyed or converted into estates in common.    If the joint tenants have not severed the union of interest during their joint lives, then upon the death of a joint tenant the survivor has the same right and takes the same estate as does the survivor in case of entireties.    The survivors in both estates are placed upon the same footing.    These two differences had nothing whatever to do with the creation of estates by entireties or estates in joint tenancy; they did not affect the instrument by which such estates were granted; but they simply operated upon such rights as had already accrued, and regulated the subsequent use and enjoyment of the estate.

The supreme court of Michigan, in *Dowling v. Salliotte,* 83 Mich. 131, held, that a deed executed to husband and wife created an estate in joint tenancy, and that the estates by entireties and joint tenancy are identical.    See, also, Ram. Ten. 170–174.

The right of survivorship is the same, whether in estates by entireties or estates in joint tenancy; whether it exists between husband and wife, or two people not married.    The survivor does not take as a new acquisition from his cotenant but under the original limitation, his cotenant's interest being extinguished.    1 Washb. Real Prop., 5th ed., p. 679, subdiv. 14.

If Tewksbury and Simons had desired to hold this land as tenants in common, they could have had words of severance inserted in the deed to make such an estate.    Whenever an estate is conveyed to two or more persons without using words of severance, the presumption is that an estate in joint ten-

ancy was intended to be created, and parol testimony could not be used to show that it was intended to create an estate in common. The words of severance were required to be in the deed. 2 Bl. Com., p. 180; 1 Washb. Real Prop., 5th ed., p. 676, subdiv. 86.

In the case of *Sargeant v. Steinberger*, 2 Ohio, 305, the supreme court held that joint tenancies did not exist in that state, but their decision was based upon the statute of partition and distribution. The same court held that estates by the entirety did not exist; but Kansas holds that estates by entireties do exist. The decisions of the courts of Ohio are no authority in Kansas upon these questions. An examination of the decisions of the courts of last resort in the various states discloses the fact that those courts which hold that estates by entireties exist also hold that joint tenancies exist, and those courts which hold that joint tenancies do not exist also hold that estates by entireties do not exist, unless the statute expressly abolished one of these estates and not the other. Wherever estates by entireties exist, estates in joint tenancy also exist. In other words, the courts have uniformly held that the right of survivorship existed or it did not exist; they have not held that this right existed in estates by entireties and did not exist in joint tenancies.

*W. H. Criley*, for defendant in error:

Plaintiff in error insists that, because joint tenancies existed under the old common law hundreds of years ago, and because there has been no statute in expressed terms abolishing the common law on this subject, therefore joint tenancies existed in Kansas when this suit was instituted. Estates by joint tenancy grew up in an entirely different condition of society from that of the present time. Such estates were based upon the feudal idea that the services due to the lord should be kept entire. 2 Bl. Com., p. 180; 1 Washb. Real Prop., 5th ed., p. 408, subdiv. 8. Feudal services were long since abolished, and in this country their place is supplanted by a system of taxation. The reason for the law having

failed, the law also should fail. "The policy of the American law is opposed to the notion of survivorship, and, therefore, regards such estates as tenancies in common." 1 Washb. Real Prop., p. 408, subdiv. 9.

In the case of *Sergeant v. Steinberger*, 2 Ohio, 305, the supreme court of that state decided that estates in joint tenancy did not exist under the laws of Ohio. The court says:

"The reasons which gave rise to this description of estate in England never existed with us. The *jus accrescendi* is not founded in principles of natural justice, nor in any reasons of policy applicable to our society or institutions. But, on the contrary, it is adverse to the understandings, habits and feelings of our people."

The supreme court of Connecticut also held, as far back as 1769, that joint tenancies did not exist in that state. *Phelps v. Jepson*, 1 Root, 48; 1 Am. Dec. 33.

The act of the legislature abolishing estates in joint tenancy is merely declaratory of the law as it existed before its passage. If this court has recognized the existence of estates by entireties, it does not necessarily follow that joint tenancies also exist. In the case of *Diver v. Diver*, 36 Pa. St. 106, the court held that an estate by entirety was not a joint tenancy.

The opinion of the court was delivered by

HORTON, C. J.: One question only is presented by the record, and that is, whether, on the 22d day of March, 1877, the date of the death of E. G. Tewksbury, estates by joint tenancy existed in Kansas. By the common law, if an estate was conveyed to two or more persons without indicating how the same was to be held, it was understood to be in joint tenancy. A joint tenancy is defined to be, "when several persons have any subject of property jointly between them in equal shares by purchase." "Each has the whole and every part, with the benefit of survivorship, unless the tenancy be severed." In the quaint language of the law, they hold each *per my et per tout*, the effect of which, technically considered, is that, for purposes of tenure and survivorship, each

is the holder of the whole.   The grand incident of joint tenancy is survivorship, by which the entire tenancy, on the decease of any joint tenant, remains to the survivors, and at length to the last survivor.   (1 Washb. Real Prop., 5th ed., §§ 406, 408; Black, Law Dict. 651; Anderson, Law Dict. 1018.   By the policy of the American law, "joint tenancy, if not a subject of aversion, is rarely a matter of preference." (Freeman, Coten., 2d ed., § 35.)   In Connecticut, the judiciary, at an early day, entirely ignored what they styled "the odious and unjust doctrine of survivorship."   (*Phelps v. Jepson*, 1 Root, 48; *Whittelsy v. Fuller*, 11 Conn. 340.)   In Ohio, the supreme court held that joint tenancy did not exist, on account of the statute in that state of partition and distribution.   (*Sargeant v. Steinberger*, 2 Ohio, 305; *Penn v. Cox*, 16 id. 30; *Wilson v. Fleming*, 13 id. 68.)   But in most of the states the rule of the common law concerning estates in joint tenancy continued until abolished by statute.   (1 Washb. Real Prop., 5th ed., 677, 678, notes, with states and statutes referred to.)   In this state, the legislature, on March 10, 1891, passed an act "to abolish survivorship in joint tenancy." (Laws of 1891, ch. 203, p. 349.)

A majority of this court, in *Baker v. Stewart*, 40 Kas. 442, and *Shinn v. Shinn*, 42 id. 1, recognized "estates in entirety," where the deed is made to the husband and wife, and ruled that in such a case the survivor of the two, at the death of the other, was entitled to the entire estate.   This, of course, was a full adoption of the rule of "estates in entirety," as recognized by the common law.   The writer of this dissented in that case.   But following the law thus declared by the majority of the court, and in view of the recognition of joint tenancy by the statutes of the state, and that "survivorship in joint tenancy" was not expressly abolished by statute until 1891, long after the execution of the deed of the 17th of May, 1872, and long after the death of E. G. Tewksbury, on the 22d of March, 1877, we must hold that estates by joint tenancy existed in Kansas prior to March 10, 1891. The reasons are much stronger for recognizing estates by joint

tenancy as existing in Kansas prior to March 10, 1891, than that "estates in entirety" existed, in view of the statutes and decisions of this state recognizing the separate existence of the wife from the husband.   "The *jus accrescendi* is as much an incident of estates in joint tenancy as of estates in entirety." (2 Cooley Bl. Com. 181, and note 2; 1 Washb. Real Prop. 406; *Dowling v. Salliotte*, 83 Mich. 131.)

Paragraph 7281, chapter 119, Gen. Stat. of 1889, reads:

"The common law, as modified by constitutional and statutory law, judicial decisions, and the condition and wants of the people, shall remain in force in aid of the general statutes of this state; but the rule of the common law, that statutes in derogation thereof shall be strictly construed, shall not be applicable to any general statute of this state; but all such statutes shall be liberally construed to promote their object."

See, also, the act in relation to landlords and tenants, concerning joint tenants.   (Gen. Stat. of 1889, ¶¶ 3630, 3631.) Then, again, the legislature, in passing the act of March 10, 1891, abolishing joint tenancy, impliedly admitted the previous existence of such estates.   That act closes as follows: "But nothing in this act shall be taken to affect any trust estate."   (Laws of 1891, ch. 203.)

The judgment of the district court will be reversed, and the cause remanded for further proceedings in accordance with the views herein expressed.

All the Justices concurring.