No. 40,737

In the Matter of the Estate of Queenye I. Foster, Deceased. JAMES E. WOODSON, Administrator, *Appellant,* v. EUGENE M. FOSTER, DAISIE F. McDONALD and ABBIE FOSTER, *Appellees.*

(320 P. 2d 855)

Opinion filed January 25, 1958.

*Charles S. Scott,* of Topeka, argued the cause, and *John E. DuMars,* of Topeka, was with him on the briefs for the appellant.

*P. A. Townsend,* of Topeka, argued the cause and was on the briefs for the appellees.

The opinion of the court was delivered by

PRICE, J.: This case presents a very interesting question in view of our statute, G. S. 1949, 59-513, which provides:

"No person who shall be convicted of feloniously killing, or procuring the killing of, another person shall inherit or take by will or otherwise from such other person any portion of his estate."

A husband and wife own real estate as *joint tenants with right of survivorship and not as tenants in common.* The husband is convicted of the second degree murder of his wife. In such a situation does the husband, as surviving joint tenant, succeed to the entire interest in the property so owned, or is his right barred

by the provisions of the statute with the result that the property, or an interest therein, is an asset of the deceased wife's estate?

The facts are not in dispute.

Queenye I. Foster and Eugene M. Foster were husband and wife. They owned two lots on College Avenue in the city of Topeka as joint tenants with the right of survivorship and not as tenants in common. On April 23, 1955, while legally married, and while still the owners of the property as aforesaid, Eugene shot and killed Queenye. She died intestate and her administrator claimed the property as an asset of her estate. This was objected to by Eugene, who in the meantime, on May 4, 1955, had deeded the property to Daisie F. McDonald and Abbie Foster. On November 15, 1955, Eugene was convicted of second degree murder in the district court of Shawnee County and was sentenced to confinement in the state penitentiary. His grantees are now in possession of the property.

Both the probate and district court held the mentioned statute to be inapplicable, and that the entire title to the property vested in the husband as surviving joint tenant. The administrator of the wife's estate has appealed.

Although this court has had occasion to deal with the general subject matter, it has never been called upon to answer the precise question here presented.

In *McAllister v. Fair*, 72 Kan. 533, 84 Pac. 112, 115 Am. St. Rep. 233, 3 L. R. A. (NS) 726, a husband killed his wife for the purpose of obtaining her property which consisted of a personal estate of about $1,000. He was convicted of first degree murder. She had no children and died intestate. Under the inheritance statute her husband would have inherited her property as her sole heir-at-law. Her brothers and sisters, the nearest blood relatives living, claimed the property on the theory that the husband's crime disabled him from taking any interest in it, and that to hold otherwise would, in effect, be giving property as a reward for crime. At that time we had no statute covering the subject of G. S. 1949, 59-513, *supra.*

While recognizing fully the justness and morality of the principle that no one should be permitted to profit or to gain property as the result of his own crime, this court nevertheless held:

"The power to declare the rule for the descent of property is vested in the legislature; and where it has provided in plain and peremptory language that a husband shall inherit from his deceased wife, and no exception is made on account of criminal conduct, the court is not justified in reading into the

statute a clause disinheriting a husband because he feloniously killed his intestate wife for the purpose of acquiring her property." (Syl.)

As a result of that decision, which was rendered in January, 1906, the 1907 legislature enacted the following statute, later appearing as G. S. 1935, 22-133:

"Any person who shall hereafter be convicted of killing or of conspiring with another to kill or of procuring to be killed, any other person from whom such person so killing or conspiring to kill or procuring said killing would inherit the property, real, personal, or mixed, or any part thereof, belonging to such deceased person at the time of death, or who would take said property by deed, will or otherwise, at the death of the deceased, shall be denied all right, interest and estate in or to said property or any part thereof, and the same shall descend and be distributed to such other person or persons as may be entitled thereto by the laws of descent and distribution, as if the person so convicted were dead."

In *Hamblin v. Marchant* (1918), 103 Kan. 508, 175 Pac. 678, 6 A. L. R. 1403 (see also opinion on rehearing, *Hamblin v. Marchant,* 104 Kan. 689, 180 Pac. 811), the husband owned an undivided one-half interest in certain real property. He was shot and killed by his wife. They had no children. He died intestate. She was convicted of manslaughter in the third degree. She claimed ownership of his interest in the property in question by virtue of being his sole surviving heir-at-law. This court held that a conviction of manslaughter in the third degree was a "conviction for killing" within the meaning of the statute and barred her from inheriting, and in the course of the opinion said that when the fact of killing is ascertained in a criminal prosecution, resulting in conviction, the property is not then taken from the person who would inherit, but rather, it is then determined that the person never did inherit and never did acquire any interest in the property.

In *Hogg v. Whitham,* 120 Kan. 341, 242 Pac. 1021, the husband killed his wife and committed suicide two days later. About three weeks later he was "convicted" by a coroner's jury of the murder of his wife. She died intestate, and a dispute arose over rights of inheritance in her property. It was held that the finding by the coroner's jury was not a "conviction" within the meaning of the 1907 enactment, *supra,* and that the husband was not disqualified to take the property as his wife's heir-at-law. In the course of the opinion it was said that the power to declare the rule for descent of property is vested in the legislature, and that when the legislature has provided in plain language the conditions of disherison from

an intestate feloniously killed the court is not justified in minimizing those conditions or in reading different conditions into the statute.

In *Noller v. Aetna Life Ins. Co.*, 142 Kan. 35, 46 P. 2d 22, the dispute was over the proceeds of a life insurance policy. The circumstances were that a husband and wife were found dead under such conditions as to make it doubtful which one survived. In the course of the opinion reference was made to the provisions of the 1907 enactment, *supra,* and it was stated that the public policy of this state, as announced by the legislature, is that one killing another shall not take property from the murdered person in any manner whatsoever, but that he must be convicted of the crime before he is barred.

In passing, it should be noted that none of the foregoing cases dealt with real estate owned by the victim and felon as "joint tenants with right of survivorship and not as tenants in common."

In 1939 the 1907 (G. S. 1935, 22-133) statute was repealed, and G. S. 1949, 59-513, *supra,* was enacted as a part of the new probate code. We find no decision of this court dealing with the later statute.

The gist of appellant's (administrator's) argument is that by the enactment of the statute the legislature has declared the public policy of this state to be that no one shall be entitled to profit as the result of his own wrong; that ownership of real property in joint tenancy with right of survivorship is not above the law and outside the statute; that the literal meaning of the statute is that no person in the situation of this husband shall inherit or take by will, or in any manner whatsoever, any property belonging to his victim; that in the case before us nothing is lacking insofar as the statute is concerned, and that the wife's estate is entitled to the property to the exclusion of the husband, who, through his felonious act, brought about her death.

Appellees (the husband and his grantees), on the other hand, contend the statute in question is inapplicable for the simple reason that the husband did not inherit, take by will, or otherwise, from his deceased wife any portion of her estate, and that upon her death he, as surviving joint tenant, took no new title or right in the property in question other than that which he had possessed ever since the execution of the joint-tenancy deed to him and his wife on October 16, 1950. In other words, it is contended that a surviving joint tenant holds under the conveyance by which the joint

tenancy is created, and that the right of survivorship does not pass anything from the deceased joint tenant to the survivor—that is, the rights of joint tenants become vested under the deed of conveyance, and not under the laws of descent and distribution.

In *Holmes, et al. v. Holmes, et al.,* 70 Kan. 892, 79 Pac. 163, the court, with reference to survivorship conveyances, stated that each of such grantees is seized with an indivisible entirety; that each takes a present vested estate, and as each owns the whole, upon the death of one the survivor necessarily retains the exclusive title to the land; that nothing descends to the survivor, nor does he acquire any new title or estate by virtue of the death of the other grantee, and that such survivor takes the whole estate by the original conveyance.

In *Simons v. McLain,* 51 Kan. 153, 32 Pac. 919, it was said that an estate in joint tenancy is an estate arising by purchase or grant to two or more persons, and that the grand incident of joint tenancy is survivorship, by which the entire tenancy on the decease of any joint tenant remains to the survivors and at length to the last survivor.

In *Best v. Tatum,* 78 Kan. 215, 96 Pac. 140, 130 Am. St. Rep. 365, in discussing the rights of heirs of a deceased joint tenant, it was said that under such a conveyance each joint tenant holds one and the same interest; that the rights of joint tenants become vested under the deed of conveyance, and that upon the death of one joint tenant the entire estate vests in the surviving joint tenant.

In Bartlett's Kansas Probate Law and Practice, Rev. Ed., § 1482, p. 302, it is said that survivorship is the distinctive characteristic of joint tenancy; that upon the death of a joint tenant the property passes to the survivor; that upon the death of a joint tenant the survivor or survivors take the whole estate freed from the claims of the heirs, devisees and creditors of the deceased joint tenant; that the fact of death is the controlling element, and that the survivor does not "take" from the deceased joint tenant, but by right under the conveyance or other instrument by which the joint tenancy was created. In support thereof *Bouska v. Bouska,* 159 Kan. 276, 153 P. 2d 923; *Householter v. Householter,* 160 Kan. 614, 164 P. 2d 101; *In re Estate of Fast,* 169 Kan. 238, 218 P. 2d 184, and the Holmes case, *supra,* are cited.

In 48 C. J. S., Joint Tenancy, § 1, p. 911, it is said that a surviving joint tenant does not take the moiety of the other tenant from him

or as his successor, but takes it by right under the conveyance or instrument by which the joint tenancy was created; that death gives the survivor no new title or right, but merely relieves him from further interference by his cotenant.

In 14 Am. Jur., Cotenancy, § 6, pp. 79 and 80, it is said that an estate in joint tenancy is one held by two or more persons jointly, with equal rights to share in its enjoyment during their lives, and having as its distinguishing feature the right of survivorship by virtue of which the entire estate, upon the death of a joint tenant, goes to the survivor, and that a surviving joint tenant holds under the conveyance or instrument by which the tenancy was created, and not under laws regulating intestate succession.

From the foregoing it is clear that a surviving joint tenant of real property does not take as a new acquisition under laws of intestate succession, but under the original conveyance, his estate merely being freed from participation of the other.

As applied to the facts before us, then, the result would be this:

Queenye and Eugene acquired the property as joint tenants with right of survivorship and not as tenants in common in October, 1950. The rights of each vested under the deed of conveyance. Upon her death, he, as surviving joint tenant, succeeded to the entire interest in the property unless barred by the statute in question.

The same legislature which passed the statute here involved also enacted what is known as the property act of 1939, the first section of which is G. S. 1949, 58-501, relating to the creation of tenancies in common and joint tenancies. (This section was later amended— see G. S. 1955 Supp. 58-501.) G. S. 1949, 58-703, being a section of the uniform simultaneous death law, enacted in 1947, relates in part to the disposition of property owned by two joint tenants whose deaths are simultaneous. Then, in 1951, the legislature enacted what now appears as G. S. 1955 Supp. 59-2286, relating to the termination of life estates and estates in joint tenancy by death.

It is significant to note that in *none* of the mentioned statutes relating to the creation of joint tenancies, or the termination thereof by death, has the legislature seen fit to limit or restrict the right of a surviving joint tenant because of criminal conduct on his part.

As indicated in the annotation at 32 A. L. R. 2d 1099, courts have differed on the question here presented (1107), and on similar

questions involving joint bank accounts, life insurance policies, and the like. Those which hold that the felon is entitled to the entire interest as surviving joint tenant base their decisions on the principle inherent in the legal concept of joint tenancy whereby each joint tenant is deemed to hold the entire estate from the time of the original conveyance, and reason that the killer acquired no additional interest by virtue of the felonious destruction of his joint tenant of which he can be deprived. Other courts, following equitable principles prohibiting a person from profiting from his own wrong, have either divested him of the entire estate, or have deprived him of one-half of the property, or have imposed a constructive trust on the entire estate held by the killer for the benefit of the heirs of the victim by adoption of the "formula through which the conscience of equity finds expression." Still others have followed the constructive trust theory, modified by a life interest in one-half of the property. (In passing, it should be noted that the case of *Welsh v. James*, 408 Ill. 18, 95 N. E. 2d 872, listed on page 1107 of the above annotation as being one of those cases upholding the right of the killer to the entire interest, has been overruled by *Bradley v. Fox*, 7 Ill. 2d 106, 129 N. E. 2d 699.)

As was said in the McAllister case, *supra*, that anyone should acquire property as the result of his crime is abhorrent to the mind of every right-thinking person, and, notwithstanding that a joint tenant's right to complete ownership unfettered by the interests of his cotenant is contingent upon him surviving, whereas, after, and because of, his felonious act removes that contingency thus making him the sole owner of the property, nevertheless we feel compelled to uphold the trial court's ruling that the statute, G. S. 1949, 59-513, is inapplicable to the facts before us.

When Queenye and Eugene acquired the property in joint tenancy each took a present vested estate in the whole under the deed of conveyance. This was so under the law of real property. The statute in question, a part of the probate code, relates to inheritance and descent and distribution, and prohibits a convicted killer from inheriting as an heir-at-law, or from taking by will, or otherwise, any portion of the victim's *estate*. Conceding the word "otherwise" means "in any manner whatsoever"—the fact remains the statute has reference only to the victim's estate. Under the law of real property, Queenye's interest became no part of her estate, as such, for purposes of intestate succession, upon her death.

By the enactment of 1907, heretofore referred to, and the 1939 statute now under consideration, the legislature has pre-empted the field and subject matter, and, as previously pointed out, in neither of those statutes, nor in those (*supra*) relating to the creation, or termination by death, of joint tenancies, has the legislature seen fit to limit or restrict the right of a *surviving joint tenant* in property so held, because of criminal conduct on his part.

Although a theory depriving a murderer of *any benefits* resulting from his crime appeals to our sense of justice and equity, we are not permitted to read something into the statute which is not there. The result is that upon the death of his wife the husband succeeded to the entire interest in the property in question.

The judgment is therefore affirmed.