No. 47,720

ROBERT L. EASTMAN, Administrator of the Estate of Margaret J. Gray, deceased, *Appellant,* v. HAZEL MENDRICK, RICHARD M. STEWART and CRAWFORD TELEPHONE COMPANY, a corporation, *Appellees.*

(542 P. 2d 347)

Opinion filed November 8, 1975.

*Robert L. Eastman,* of Becker, Hildreth & Eastman, of Coffeyville, argued the cause, and *Roger L. Gossard,* of Coffeyville, was with him on the brief for the appellant.

*Richard Dearth,* of Jones & Dearth, Chartered, of Parsons, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

KAUL, J.: The controversy in this case involves the joint tenancy ownership of savings accounts, United States Government Bonds, and preferred stock of a telephone corporation. The savings accounts and securities in question were owned by Margaret J. Gray, nee Stewart, deceased, and either her sister Hazel Mendrick or her brother Richard M. Stewart, as joint tenants.

Plaintiff-appellant, as administrator of Margaret's estate, filed an action seeking to recover a one-half interest in the several savings accounts and sixty shares of preferred stock originally issued by the Edna Telephone Company, which was succeeded by the Crawford Telephone Company. A pretrial order put in issue the ownership of the United States Government Bonds.

The issues below were resolved by summary judgment rendered in two parts at different stages of the litigation. The facts are essentially undisputed and the summary judgment is not challenged on procedural grounds.

The decedent, Margaret J. Gray, and Gordon Gray, her surviving spouse and sole heir-at-law, were married relatively late in their lifetimes. The marriage took place on September 6, 1951, and continued until Margaret's death on February 14, 1969. For the last seven or eight years of their marriage, Margaret and Gordon resided rent-free in a farm house near Edna, which was owned by Margaret's brother, the defendant Richard M. Stewart.

The undisputed evidence shows that although decedent and her husband got along well his financial contributions to the marriage were quite limited. In addition to the interest and dividends Margaret received from the accounts in question and the stocks and bonds involved in this action, Gordon had a little insurance money coming in and a small annual annuity of $50.00. They both received Social Security benefits. There was some testimony that Mr. Gray had become disabled by Parkinson's disease and apparently he died not long after Mrs. Gray.

Beginning in 1953, and at various dates thereafter during the Grays' marriage, the joint tenancy savings accounts in controversy were established in savings and loan associations in Parsons and Coffeyville, Kansas. These accounts were of two basic types. The first type consisted of conventional joint tenancy with survivorship savings accounts containing no trust provisions. The various sig-

nature cards or certificates of deposit for these accounts were either in the joint names of Margaret J. Gray or her brother, Richard M. Stewart, "as joint tenants with right of survivorship and not as tenants in common," or Margaret J. Gray or her sister, Hazel Mendrick, "as joint tenants with right of survivorship and not as tenants in common." The second type were joint trust savings accounts evidenced by signature cards or certificates of deposit set up in two names as trustees for a named beneficiary and signed by both trustees, indicating their capacity as such. Although the agreements on the signature cards were expressly made subject to certain trust provisions on the reverse side, the membership and savings account is expressly taken out in the joint names of the signatory trustees "as joint tenants with right of survivorship and not as tenants in common." The trust provisions give the trustees the power over the account:

"To withdraw and transfer the same in whole or in part, and to exercise full control over the participation value thereof as though the account were held absolutely free and discharged of any trust, . . ."

In resolving the issue presented here, the joint trustee accounts need not be considered any differently from the nontrust joint and survivor accounts. Plaintiff concedes the "magic words" establishing joint tenancy were employed in each instance. In his brief, plaintiff does make a particular reference to the trustee accounts which will be discussed later herein.

The trial court first sustained defendants' motion for summary judgment with respect to the savings accounts and bonds. The journal entry in pertinent part reads:

"Now ON THIS 30th day of April, 1973, the Court having received the briefs and written arguments of the parties and being fully advised in the premises finds that the surviving joint tenant of a bank or savings and loan account or U. S. Government Bonds obtains title under the contract creating the joint tenancy and upon the death of one joint tenant such accounts and bonds constitute no part of the assets of the estate, based upon an inter vivos action of the creator of the joint tenancy; the incompetency of a joint tenant after establishment of the joint tenancy has no effect upon the ownership of the account after the death of the incompetent joint tenant and the records shows no adjudication of incompetency; a married person has an absolute right during his or her lifetime to convey or dispose of his or her personal property without the knowledge or consent of the spouse free from claim of the surviving spouse after death.

"The Motion For Summary Judgment as to the joint tenancy savings accounts and loan accounts and as to the U. S. Bonds should be sustained and the re-

maining issues herein to be determined are the ownership of the telephone stock and certain personal property alleged to have been sold by the defendants."

The record indicates that a hearing was had and some testimony submitted concerning ownership of the telephone stock. Judgment was rendered in this regard on July 1, 1974, to the effect that the stock certificates in question were in the possession of and owned by Richard M. Stewart.

Plaintiff specifies two points on appeal. In his first point plaintiff contends the judgment rendered on April 30, 1973, relating to the bonds and savings accounts is in error "as it constitutes a fraud on the marital rights of the surviving spouse and does not protect the rights of the surviving spouse to one-half of the personal property held by the decedent at the time of death." In his second point, plaintiff claims error in the same language with respect to the telephone stock.

In his brief plaintiff concedes that both points allege the same error and covers both in one argument. Plaintiff says there is one central issue on appeal and states it in these words:

"Does a married person have the power to contract by a colorable or illusory transfer, all assets standing in her name at the date of her death to the utter exclusion of her surviving spouse?"

Plaintiff has not reproduced a savings bond in the record, nor has he set out the precise language depicting the ownership of the bonds. In his brief, he says:

"Since all of Margaret Gray's assets were in some form of joint tenancy, these joint tenancy contracts, whether straight, trustee or bonds; perpetrated a fraud upon the marital rights of the surviving spouse. . . ."

In view of this statement and the content of record presented, we shall consider the issue concerning ownership of the bonds in the same context as that relating to the joint accounts.

The doctrine of joint tenancy and its application to personal as well as to real property has been recognized in this state for many years. (*Malone v. Sullivan,* 136 Kan. 193, 14 P. 2d 647; and *In re Estate of Biege,* 183 Kan. 352, 327 P. 2d 872, and cases cited therein.) From the many cases dealing with the doctrine certain rules have emerged which are presently recognized in this jurisdiction. Running through all of our cases, commencing with *Simons v. McLain,* 51 Kan. 153, 32 Pac. 919, is the concept that the grand incident of joint tenancy is survivorship, by which the entire tenancy, on the demise of any joint tenant, descends to the survivor or survivors and at length to the last survivor. This concept of joint tenancy

was most recently stated in *Johnson v. Capitol Federal Savings & Loan Assoc.*, 215 Kan. 286, 524 P. 2d 1127, wherein we held:

"Survivorship is the distinctive characteristic and the grand incidence of an estate in joint tenancy. On the death of a joint tenant the property descends to the survivor or survivors and the right of survivorship terminates only when the entire estate, without the tenants having disposed of their title or otherwise terminating the tenancy, comes into the hands of the last survivor." (Syl. ¶ 3.)

It is so well-established by our many cases that the question whether a joint tenancy bank savings account is created in the name of a depositor and another must be determined on contract principles. (*Agrelius v. Mohesky*, 208 Kan. 790, 494 P. 2d 1095; *Bowen, Administrator v. Hathaway*, 202 Kan. 107, 446 P. 2d 723; and *In re Estate of Smith*, 199 Kan. 89, 427 P. 2d 443.)

The cases mentioned above and those cited therein further set out that where a depositor executes an agreement in clear and unambiguous language showing that an estate in joint tenancy with rights of survivorship is intended, then such an estate is created and the agreement is enforceable according to its terms. In *Agrelius v. Mohesky*, supra, Mr. Justice Fontron speaking for the court had this to say:

"Specifically, we have held that where the signature card contains the so-called 'magic words' commonly regarded as creating a joint tenancy, *i. e.*, 'as tenants with right of survivorship and not as tenants in common' the intention is clear and unambiguous and parol evidence is not admissible to explain or vary the terms of the written contract in the absence of fraud or mutual mistake. . . ." (p. 792.)

In his second cause of action plaintiff does allege in his petition that during the last year of decedent's life, and with knowledge of decedent's senility, defendants conspired to change savings accounts then in the name of deceased and her husband, Gordon Gray, so that upon her death they could take possession of her property to the exclusion of her husband. Plaintiff further alleged that under such influence and guidance by defendants, changes were made in Margaret's accounts whereby defendants took possession after her death. A careful examination of the record reveals no evidence to support these charges. Actually, the evidence indicates that the transactions were openly made without fraud or deceit on the part of anyone.

Plaintiff submitted an exhibit (No. 7) which recites the history of the Margaret J. Gray accounts with the First Federal Savings and Loan Association of Coffeyville. One of these accounts, No.

11088, was originally entitled "Mr. Gordon Gray, Trustee, or Margaret J. Gray, Trustee—John Harold Gray, Beneficiary." In the exhibit, plaintiff recites, that:

"On October 28, 1968, this account was transferred to account No. 26579 in the names of Margaret J. Gray or Richard M. Stewart as joint tenants."

This last statement does not appear to reflect the whole transaction. Exhibit No. 8, a ledger sheet of account No. 11088, indicates that on October 28, 1968, exactly one-half of the balance of the account was withdrawn and transferred to account No. 26579. However, this transaction was preceded on October 15, 1968, by a request (plaintiff's exhibit No. 8A) that the passbook for account No. 11088 be reissued to—

"   . . .  two equal passbook acc'ts titled
"(1) Gordon Gray or Elmer D. Gray
"(2) Margaret J. Gray or Richard M. Stewart."

The old passbook was surrendered for reissue as directed. The request was signed "Gordon Gray" and "Margaret J. Gray." This evidence reflects that the transactions were an aboveboard severance of the original joint tenancy account with the consent, acquiescence and full knowledge of both parties. The transaction negates any taint of fraud.

The central thrust of the argument advanced by plaintiff seems to be that although the trial judge correctly construed the law of joint tenancy accounts, he should not have extended the application of these rules into a situation whereby the joint tenancy agreement operates to defeat the statutory rights of a surviving spouse under K. S. A. 59-602.

Plaintiff relies upon *In re Estate of Mullin,* 201 Kan. 756, 443 P. 2d 331, wherein we held in substance that just as a husband cannot will away from his wife without her consent more than one-half of his property, neither can he, during marriage, contract for disposition of his property by will to another so as to defeat the wife's rights to a widow's share in his estate, without her consent. (*In re Estate of Mullin,* supra.)

The obvious distinction between *Mullin* and the instant case and the short answer to plaintiff's contention is that whereas a contractual joint and mutual will involves a testamentary disposition of property to which 59-602 clearly applies; under a joint tenancy agreement, on the other hand, a surviving joint tenant of personal property does not take as a new acquisition from the deceased joint

tenant under the laws of descent and distribution, but under the conveyance or contracts by which the joint tenancy was created, his estate merely being freed from the participation of the other. (*In re Estate of Pyke,* 199 Kan. 1, 427 P. 2d 67; *In re Estate of Foster,* 182 Kan. 315, 320 P. 2d 855; and *Dexter v. Dexter,* [10th Cir. 1973] 481 F. 2d 711.) Prior Kansas decisions, dealing with the incidents of joint tenancy, are reviewed in *In re Estate of Foster,* supra, and it is pointed out that the rights of joint tenants become vested by the conveyance; that each holds one and the same interest; and that nothing descends to the survivor, nor does he acquire any new title or estate by virtue of the death of the other grantee, but that such survivor takes the whole estate by the original conveyance.

Plaintiff also relies on *Ackers v. First National Bank of Topeka,* 192 Kan. 319, 387 P. 2d 840, wherein the court ruled that a spouse cannot defeat the rights of the surviving spouse by creating a revocable trust for the ultimate benefit of charity, retaining a life interest, the power to revoke, and to direct payments to himself out of the trust property. Under this set of facts the court held that by reason of the husband reserving the power to revoke the trust, the transfer was colorable only and could not deprive the widow of her distribution share under K. S. A. 59-504. The court in *Ackers* recognized that prior decisions appeared to lean toward the protection of the right of a spouse to inherit as against semblance of overreaching on the part of the other by the execution of an illusory instrument. We do not intend to stray from that philosophy. In the instant case, however, we are not confronted with an illusory instrument or a revocable trust, but with a joint tenancy ownership created by an unambiguous inter vivos contract and untainted by fraud, overreaching or mutual mistake. We are cited no law and we know of none which prevents named trustees from owning property as joint tenants with rights of survivorship. The trustee accounts were a contractual arrangement and the relationship is governed by principles of contract law in the same manner as the other accounts.

It has long been the law of this state that a married person has the right to dispose of his or her personal property during his or her lifetime without regard to his spouse. (*Winsor v. Powell,* 209 Kan. 292, 497 P. 2d 292; *Ackers v. First National Bank of Topeka,* supra; and *Small v. Small,* 56 Kan. 1, 42 Pac. 323.) This right includes the right of disposition by conveyance in joint tenancy.

Plaintiff says that defendants have failed to cite a case upholding the proposition that a married person may by joint tenancy conveyance contract away personal property to the exclusion of the statutory rights of the surviving spouse. The parties have apparently overlooked *In re Estate of Fast,* 169 Kan. 238, 218 P. 2d 184; and *Malone v. Sullivan,* supra.

The *Malone* case is a landmark decision holding that even though R. S. 22-132 (an antecedent of K. S. A. 58-501) abolished joint tenancy and survivorship as they existed at common law, it did not render unlawful a contractual arrangement creating joint tenancy. At issue was a joint tenancy-survivorship savings account of Amy Malone and her sister on deposit with the Putnam Trust Company. On Amy's death an action was instituted by her surviving husband, William Malone, claiming his statutory half interest in Amy's estate and that the joint tenancy savings account created by his wife was an asset of her estate. The trial court held to that effect. On appeal this court reversed, holding that the arrangement was essentially contractual, not subject to rescission or cancellation, and binding on all three parties (Amy, her sister and the Trust Company); that no rule of law or public policy forbade such arrangement; and that the right of the sister to the entire fund must be respected and upheld.

*Malone* was followed by *Bouska v. Bouska,* 159 Kan. 276, 153 P. 2d 923, in which the court applied the principles announced in *Malone* after R. S. 22-132 had been succeeded by K. S. A. 58-501, which was enacted as a part of the property act of 1939.

In the case of *In re Estate of Fast,* supra, the deceased husband, E. H. Fast, had established a joint tenancy account with a savings and loan association with one Minnie M. Minglin, as survivor. The widow of Mr. Fast, the administrator of his estate, initiated the litigation putting at issue the joint account. This court held that the language employed clearly created a joint tenancy with survivorship and that the survivor was entitled to the account.

As we have previously noted, plaintiff does not make a separate argument concerning the telephone stock, but concedes that his two points on appeal allege the same error and are covered by the same argument. Nevertheless, we have examined the facts surrounding the purchase and ownership of the stock.

The telephone stock was issued in two certificates, one for twenty shares, issued in the names of Richard M. Stewart or Margaret J. Gray; the other for forty shares was issued in the names

of Margaret J. Gray or Richard M. Stewart. Richard testified that he purchased the twenty shares for $1,000.00 from the joint tenancy savings account in his and Margaret's names and that he discussed the matter with Margaret and Mr. Gray before the purchase was made—Richard retained possession of the twenty-share certificate at all times.

The forty shares were purchased by Margaret for $2,000.00 from Hubert W. Froman, manager of the telephone company. In his deposition, Mr. Froman testified that his transaction took place in his home and that Mr. Gray was present with Margaret. Mr. Froman further testified that Margaret said the $2,000.00 was Stewart money accumulated by the family prior to her marriage to Mr. Gray and that she wanted the certificate made out "Margaret J. Gray or Richard M. Stewart." Prior to entering the hospital before her death, Margaret delivered the forty-share certificate to Richard M. Stewart and it remained in his possession. When the certificates were called for redemption, after Margaret's death, Richard endorsed them and delivered them to the company.

The certificates were issued in bearer form and are "securities" as defined in K. S. A. 84-8-102 [Amended, Laws 1974, Ch. 455, Sec. 1, now 1974 Supp.] of the Uniform Commercial Code-Investment Securities, and were negotiable instruments (K. S. A. 84-8-105). There is evidence showing an agreement of joint ownership with survivorship between Margaret and Richard. Richard always had possession of the twenty-share certificate. The forty-share certificate was delivered by Margaret to Richard. There is no evidence that the delivery was procured by fraud or duress. On these facts the trial court found that Richard had lawful possession of and owned the stock certificates. There are no grounds shown to disturb the ruling.

The judgment is affirmed.

MILLER, J., not participating.