(566 P.2d 33)

No. 48,306

THE WALNUT VALLEY STATE BANK, a Corporation, *Appellant,* v. MERLE J. STOVALL and EMMA M. STOVALL a/k/a EMMA M. MEDLIN, *Appellee,* and THE TOWANDA STATE BANK, Garnishee, Defendant.

Opinion filed July 1, 1977.

*Morgan Metcalf,* of Coutts, Coutts & Metcalf, of El Dorado, for the appellant. No appearance for the appellee.

Before SPENCER, P.J., ABBOTT and SWINEHART, JJ.

SPENCER, J.: This is an appeal from a judgment which vacated and set aside an order of garnishment.

Plaintiff obtained judgment against defendants Merle J. and Emma M. Stovall. Thereafter, the Stovalls were divorced and Emma married Archer B. Medlin. The Medlins established a joint checking account at The Towanda State Bank and each of them signed the bank signature card. Thereafter, and upon application of the plaintiff, an order of garnishment was issued to the garnishee, which answered stating that Emma had a checking account with that bank in the amount of $411.52. Three days thereafter, Emma moved to vacate the order of garnishment,

which motion was overruled by the county court. Emma appealed to the district court, which heard the matter and entered judgment sustaining the motion to vacate and to set aside the order of garnishment, and assessed costs to the plaintiff.

At the outset of the trial, plaintiff moved to dismiss the appeal for the reason that the defendants had failed to pay the docket fee of $35 as required by K.S.A. 60-2001, and for the further reason that there was no surety on the appeal bond as provided by K.S.A. 61-2102.

Plaintiff argued to the trial court that the language of K.S.A. 61-2102 that "[u]pon filing the notice of appeal and such security for costs as may be required, the appeal shall be deemed perfected," required that, in order to have an effective bond, there must be both a principal and a surety on that instrument.

The record reveals that, in conjunction with the notice of appeal from the county court to the district court, a bond on appeal was filed whereby Archer B. Medlin bound himself to pay all costs of the appeal. The bond was approved as evidenced by the following statement over the signature of the county judge:

"Being fully satisfied as to the sufficiency of the above surety, the above bond is taken and approved by me this 20 day of August, 1975."

In the case of *Underwood v. Allmon,* 215 Kan. 201, 523 P.2d 384, it was held:

"Under the provisions of K.S.A. 1973 Supp. 61-2102 governing civil appeals from a county court to the district court, the filing of an appeal bond to secure the costs is not mandatory and is necessary to perfect an appeal only when required by the judge of the county court from which the appeal is taken." (Syl. 1.)

With the acceptance and approval of the bond on appeal by the county judge in the form presented, no further security was required in order to perfect the appeal.

With respect to the failure to pay the docket fee prior to the hearing in the district court, the record reveals that, in response to an argument by plaintiff in support of the motion to dismiss on this ground, the trial judge said:

"The Court feels that is right. I will give you a certain amount of time to get it paid."

to which the defendants responded:

". . . We will make provisions to pay the docket fee today. . . ."

and the matter went on to trial. The argument here is based on K.S.A. 1975 Supp. 60-2001(a), which provided:

"No case shall be filed or docketed, whether original or appealed, without payment of a docket fee in the amount of thirty-five dollars ($35) to the clerk of the district court."

In *Avco Financial Services v. Caldwell,* 219 Kan. 59, 547 P.2d 756, it was held:

"The time within which a docket fee is paid is secondary to actual payment. Since payment of the docket fee affects only the clerk of the district court, and an adverse party is not affected by the time of the payment of the docket fee, it should not be regarded as jurisdictional." (Syl. 1.)

We hold that the trial court did not err in denying plaintiff's motion to dismiss for failure to pay the docket fee prior to trial or for the alleged omission in the appeal bond.

Plaintiff argues that notwithstanding the issue being litigated was simply whether or not the funds in the joint checking account were subject to garnishment, the court nevertheless allowed Emma to testify, over objection, to certain matters totally irrelevant and immaterial to that issue. This concerned such things as substantive portions of Emma's divorce decree; that her former husband was to pay for the automobile upon which the plaintiff had a lien and which plaintiff subsequently repossessed; and that Emma received alleged unfair treatment when the automobile was repossessed by plaintiff. Plaintiff contends that such testimony was offered solely for the purpose of prejudicing plaintiff in the eyes of the court and suggests that the strategy was an unqualified success as was evidenced by certain remarks of the trial judge as shown in the record.

As stated in *State v. Brown,* 217 Kan. 595, 538 P.2d 631:

"Admissibility of evidence is largely within the discretion of the trial judge, subject to exclusionary rules. . . .

"In discussing relevancy, we have frequently said that to be admissible in the trial of a case evidence must be confined to the issues, but it need not bear directly upon them. To render evidence of collateral facts competent, there must be some natural, necessary or logical connection between them and the inference or result which they are designed to establish. . . ." (217 Kan. at 599.)

There is some testimony in the record to indicate that plaintiff's judgment was an outgrowth of the loan to the Stovalls prior to their divorce, and it is difficult to perceive how the testimony of which plaintiff complains was relevant to the issue of whether the funds in the joint account were subject to garnishment. However,

this was a trial before the judge and as stated in *State v. O'Neal,* 204 Kan. 226, 461 P.2d 801:

". . . When there is no jury to be misled by the evidence there is a strong presumption on appeal that the trained mind of the trial judge was not led astray by such evidence and that proper limitations on weight and probative force were applied. . . ." (204 Kan. at 230.)

Even as we concede that the disputed testimony is presumed to have been considered by the judge and did enter into his decision per Supreme Court Rule No. 116, 214 Kan. xxxvii (now Rule No. 165, 220 Kan. LXVI), the record before us rebuts that presumption and we must conclude from the record that, in the final analysis, the decision of the trial judge was based on the sole fact that Mr. Medlin was the owner of the funds deposited to the joint account. In *Bott v. Wendler,* 203 Kan. 212, 453 P.2d 100, it is said:

". . . K.S.A. 60-259 is couched in discretionary language, and the overriding rule is that the granting of a new trial on the grounds of surprise or newly discovered evidence is discretionary on the part of the district court, and it will not be reversed unless a clear abuse of discretion is shown. . . ." (203 Kan. at 229.)

We find no clear abuse of discretion and hold there was no error in denying the motion for new trial.

After the hearing, the trial judge issued his opinion letter dated October 14, 1975, to counsel, which contained his findings of fact as follows:

"I have read the citations which you gentlemen provided me and find that the garnishment of the bank account held by the Towanda State Bank in the joint account of Archer B. Medlin and Emma Maye Medlin should be set aside. From this ruling it is obvious that I do not reach the same conclusions as the author of the note in the Washburn Law Journal and frankly I was more impressed with the cases set forth at 11 A.L.R. 3, Page 1487 under the section heading of 'Where the Funds in the Act Belong to the Husband Alone.' I feel that this is the situation here and *that the funds in said bank account are the property of Mr. Medlin and that the account was established as a joint account for the convenience of Mr. Medlin when he was on the road driving a truck.* It is the Court's recollection that it has been at least 6 months since Emma Medlin has been employed and that any loan made by the Liberty Loan Corporation of Hutchinson, Kansas was made primarily to Archer Medlin in March of 1975 and was not in fact made to Emma Medlin." (Emphasis added.)

We have not been favored with an appellee's brief. However, the status of the account created by Archer and Emma Medlin at The Towanda State Bank as a "joint account" has not been challenged at any stage of these proceedings. We accept the fact

that it is a joint account, which by the depositor's contract with that bank is subject in whole or in part to the demand of either of the depositors or the survivor of them. As stated in *Eastman, Administrator v. Mendrick,* 218 Kan. 78, 542 P.2d 347:

"The doctrine of joint tenancy and its application to personal as well as to real property has been recognized in this state for many years. . . . Running through all of our cases, commencing with *Simons v. McLain,* 51 Kan. 153, 32 Pac. 919, is the concept that the grand incident of joint tenancy is survivorship, by which the entire tenancy, on the demise of any joint tenant, descends to the survivor or survivors and at length to the last survivor. . . . It is so well-established by our many cases that the question whether a joint tenancy bank savings account is created in the name of a depositor and another must be determined on contract principles. . . . (218 Kan. at 81-82.)

". . . Prior Kansas decisions, dealing with the incidents of joint tenancy, are reviewed in *In re Estate of Foster* [182 Kan. 315, 320 P.2d 855, and it is pointed out that the rights of joint tenants become vested by the conveyance; that each holds one and the same interest; and that nothing descends to the survivor, nor does he acquire any new title or estate by virtue of the death of the other grantee, but that such survivor takes the whole estate by the original conveyance." (218 Kan. at 84.)

Most of the decisions by our supreme court which have considered joint accounts have involved attempts by the estate of a deceased depositor to secure the funds against the claim of the other joint depositor. *Malone v. Sullivan,* 136 Kan. 193, 14 P.2d 647; *Eastman, Administrator v. Mendrick,* supra; *In re Estate of Woods,* 218 Kan. 630, 545 P.2d 307, and cases cited therein. Where the intent is clear, *e.g.* from an unambiguous signature card, it has been held that the joint depositor takes the funds. *Johnson v. Capitol Federal Savings & Loan Assoc.,* 215 Kan. 286, 524 P.2d 1127. However, where the intent is not clear, parol evidence is admissible, which might show that the funds should go to the estate of one of the depositors. *In re Estate of Woods,* supra, at 632-633.

None of the Kansas authorities cited dealt with the precise question here presented and plaintiff argues that since as an incident of joint tenancy ownership each depositor is the owner of the whole of the fund (*In re Estate of Foster,* supra), Emma must be considered the owner of the whole and the whole should be subject to garnishment by her judgment creditor. In support of this position, plaintiff cites the case of *Park Enterprises, Inc. v. Trach,* 233 Minn. 467, 47 N.W.2d 197 (1951), wherein the whole of the account held jointly between husband and wife was sub-

jected to garnishment by the creditor of only one of the depositors. It was noted there that the defendant was entitled to withdraw any part or all of the account and that plaintiff was in effect subrogated to that right. Plaintiff suggests that the logic expressed in *Park Enterprises, Inc. v. Trach,* supra, be adopted in this case.

As noted, the issue here involved is one of first impression in Kansas. We are not concerned as to whether it is a joint account and with the rights of survivorship upon the death of one of the joint owners, but rather with the rights of living joint depositors, both of whom have equal rights to the account and neither of whom sought by any overt act to assume total ownership of the account prior to the order of garnishment. The debt for which judgment was granted against Emma existed prior to her marriage to Archer and prior to the establishment of the joint bank account.

Under the circumstances, three possibilities exist as to the garnishment of the account by the judgment creditor of Emma: (1) none of the funds can be garnisheed, (2) all of the funds can be garnisheed, or (3) funds to the extent of Emma's equitable interest in the account can be garnisheed.

As to the view that none of the funds can be garnisheed, we find the following in Annotation 11 A.L.R.3d 1465, 1468:

". . . There are, however, a few cases holding for various reasons that a joint bank account is not so garnishable, principally in jurisdictions that recognize tenancies by the entirety in personal property and consider that one was created as to the account sought to be garnished."

It is noted that Kansas no longer recognizes as such tenancy by entirety. *Stewart v. Thomas,* 64 Kan. 511, 68 Pac. 70. See also K.S.A. 58-501.

Plaintiff's view that all of the funds can be garnisheed does find support in *Park Enterprises, Inc. v. Trach,* supra. However, as indicated in Annotation 11 A.L.R.3d 1465, this is not the majority rule. Plaintiff quotes from the annotation that "[i]n any event, most courts are agreed that a joint bank account is garnishable at the behest of a creditor of one of the depositors." (11 A.L.R.3d at 1468.) However, this statement is qualified as follows:

"In jurisdictions where joint bank accounts are held vulnerable to the process of the creditor of one depositor, garnishment to the extent of the debtor's equitable ownership of the funds seems to be the general rule. . . ." (11 A.L.R.3d at 1468-1469.)

Indeed, it appears that the Minnesota case is the only authority for the full amount view.

This leads to the view that limits the garnishment to the extent of the debtor's equitable interest. This is the general rule. See 11 A.L.R.3d at 1473. This view finds implicit support in the recent case of *Schierenberg v. Hodges,* 221 Kan. 64, 558 P.2d 133. In that case, a wife, separated from her husband, transferred funds from a joint account she maintained with him to another joint account with her brother. A short time afterward, she died and her husband brought an action to recover the funds, alleging fraud. The trial court granted summary judgment for the brother. Our supreme court reversed, restating the rule that absent fraud, one spouse may make an inter vivos transfer of his or her own personal property to another person without contravening the statutory rights of a surviving spouse, but noting:

". . . The plaintiff's deceased spouse may well have lawfully transferred the funds in question; the funds may have come from her earnings, or they may have been accumulated solely by the plaintiff. Such questions have not been litigated or determined. We conclude that the court should not have sustained the motion for summary judgment." (221 Kan. at 66.)

We gather from the foregoing that if funds in the account were accumulated solely by one of the joint owners, our court would consider it a fraud for one of the joint owners to expropriate those funds to the exclusion of the other.

We adopt the view that the account is garnishable only to the extent of the debtor's equitable interest, and that parol evidence was properly allowed to establish that interest. Such does not conflict with the rules disallowing parol evidence in those cases where the nature of the account itself is in question. *Agrelius v. Mohesky,* 208 Kan. 790, 494 P.2d 1095. Here, the issue is the extent of one joint tenant's interest in the account during the lifetime of both tenants. Allowing parol in such a case finds support in *Schierenberg v. Hodges,* supra.

". . . [U]nder well-established rules of appellate review this court disregards any conflicting evidence or inferences which might be drawn therefrom and accepts as true the evidence, and all inferences to be drawn therefrom, which support or tend to support the findings of the trial court. . . ." (*Highland Lumber Co., Inc. v. Knudson,* 219 Kan. 366, 371, 548 P.2d 719.)

Findings of the district court cannot be disturbed without a showing of lack of substantial competent evidence. *In re Estate of Barnes,* 218 Kan. 275, 280, 543 P.2d 1004.

Among cases which hold to the general rule that the account is garnishable to the extent of the debtor-depositor's interest, it has been held that where the showing is that the debtor has no interest, the account is not subject to garnishment. See *Spear v. Farwell,* 5 Cal. App. 2d 111, 42 P.2d 391 (1935); *Properties, Inc., v. Trust Co.,* 152 Ohio St. 430, 89 N.E. 2d 638 (1949).

Had it been determined that all or some part of the funds in the joint account did in fact belong to Emma, garnishment of her interest in that account would have been proper. However, on the basis of the court's finding that all of the funds were in fact Archer's, the trial court did not err in setting aside the order of garnishment.

Judgment is affirmed.