No. 45,482

Dorothy A. Flannery, *Appellant*, v. Lawrence S. Flannery, *Appellee*.

(452 P. 2d 846)

Opinion filed April 12, 1969.

*Albert M. Ross,* of Kansas City, argued the cause, and *Harold K. Wells* and *James M. Barnett,* both of Kansas City, were with him on the brief for the appellant.

*George K. Melvin*, of Lawrence, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: This is an appeal by the plaintiff, Dorothy A. Flannery, from an order overruling her motion to modify a divorce decree in two particulars: (1) By requiring her former spouse, the defendant Lawrence S. Flannery, to pay for certain repairs to the ancestral home being occupied by Mrs. Flannery and a minor son, the title to which had been awarded equally to the two Flannerys and which plaintiff had been given the right to occupy until September 6, 1969; (2) by increasing the child support of $120 per month originally set by the court.

The divorce case, itself, was heard by Judge Floyd H. Coffman of Ottawa who was assigned to hear the matter after the regular district judge, Frank R. Gray, disqualified himself. Shortly after the motion for modification was filed, plaintiff's counsel, Mr. Ross, wrote Judge Coffman asking him to set the motion for hearing. The following day, the defendant's counsel, Mr. George Melvin, sent a letter to Judge Coffman objecting to his hearing the motion and stating that Judge Gray should hear it even though he had disqualified himself from hearing the divorce.

Three days later Judge Coffman advised both attorneys by mail that he had set the matter for hearing but would not insist on hearing it if Judge Gray should hold that he, Coffman, had no jurisdiction. A further letter was mailed to Judge Coffman by Ross advising that he assumed Judge Gray would not wish to hear the motion but that he had no preference as to which judge heard it and would leave that to the sound discretion of the courts. Thereafter Judge Gray advised by letter that the matter which had required his disqualification appeared to have been finally adjudicated and he saw no reason why he could not hear the motion.

The upshot of the extended colloquy was that Judge Gray determined he would hear plaintiff's motion, and this he did, despite a motion filed by plaintiff for a change of venue. In ruling on this motion, Judge Gray said:

". . . that the reason for the disqualification in the divorce hearing is, in the Court's judgment, now resolved inasmuch as a divorce has been granted, and the issues upon which the Court felt disqualified to hear have been resolved. . . . The only basis of your motion, if it could be construed as one, is that you feel the Court should disqualify itself, and I think the only

person who can determine whether he can disqualify himself is the Court himself. I don't feel that I will be biased or prejudiced in connection with this motion, so I do not disqualify myself."

The plaintiff contends that Judge Gray erred in making this ruling and in proceeding to hear plaintiff's motion to modify.

Treating plaintiff's motion for change of venue as a motion for disqualification, as it seems to have been considered by Judge Gray, we entertain the view that no error was committed in its denial or in Judge Gray's proceeding to act in the matter. In so concluding, we have no intention of repudiating the principle that one who acts in a judicial capacity is disqualified to hear any matters concerning which he may be biased or prejudiced, or in which he may have an interest. That principle is far too basic to the Anglo-American concept of justice to be abrogated or debased. In *Tootle v. Berkley*, 60 Kan. 446, 56 Pac. 755, it was said:

". . . It is the purpose of the law that no judge shall hear and determine a case in which he is not wholly free, disinterested, impartial, and independent. . . ." (p. 448.)

See, also, *Peyton's Appeal*, 12 Kan. 398.

However, the fact of disqualification, that is, the existence of bias or prejudice or of conflict of interest on the part of a judicial officer is a matter which must be established. In this state a judge may not be disqualified by the simple expedient of a certificate filed by a litigant alleging bias, prejudice or conflicting interest, although such a rule exists in some jurisdictions by legislative enactment. Ordinarily it may be said, absent circumstances which of themselves would tend to cast doubt as to the fairness of whatever judgment the judge might pronounce, the question of bias or prejudice on the part of a court rests largely within the conscience of the court itself. In the early case of *City of Emporia v. Volmer*, 12 Kan. 622, it was held:

"In criminal cases, on an application for a change of venue on account of the prejudice of the judge, such facts and circumstances must be shown by affidavits or other evidence as clearly establish such prejudice; and unless it be by such testimony clearly established, a reviewing court will sustain an overruling of the application, on the ground that the judge must have been personally conscious of the falsity or non-existence of the grounds alleged." (Syl. ¶ 1.)

This holding was cited with approval in *Sheldon v. Board of Education*, 134 Kan. 135, 140, 4 P. 2d 430, and applies with equal force in both civil and criminal cases.

In the present case Mrs. Flannery did not allege in her motion for change of venue that Judge Gray was biased or prejudiced. She merely set out that she felt Judge Coffman was acquainted with the facts and circumstances involved in the dispute between the parties, including their financial situation, and that it had already been detrimental to her health to have the matter assigned to a different judge.

Indeed, the argument pressed most strongly by Mrs. Flannery in this appeal is that where a judge has once disqualified himself, his disqualification persists throughout all subsequent proceedings which may arise in connection with the case. Her position in this respect conflicts with the generally accepted view in this country as set out in 30A Am. Jur., Judges, § 220, pp. 115, 116:

"The question whether the order or determination of a judge that he is disqualified may be revoked by himself, or by some other member of the same court, depends upon the construction of the local statutes, if any, governing the disqualification of judges, upon the effect to be given to the filing of a sufficient affidavit of prejudice, and also depends on whether another judge has been called to act in the case and has proceeded therein and still retains the case for disposition. In view of the general control of a court over its orders and decrees rendered at the same term, most of the cases are consistent with the doctrine that, absent statutory provision to the contrary, the bare fact of there having been a judicial order or determination of a judge's disqualification does not prevent his reassuming full jurisdiction by timely order showing that in fact there was no disqualification or that the same has been removed."

See, also, annotation in 162 A. L. R., Judge—Revocation of Disqualification, III, p. 646, *et seq.*

Although this court has never had occasion to pass upon the matter of disqualification under the precise circumstances now before us we believe some analogy can be found in *Price v. Gibson,* 165 Kan. 10, 192 P. 2d 219, where a probate judge pro tem was selected to hear a petition for probate of a will when it developed the regular judge would be a witness as to the testator's mental capacity. It was held in this case that the authority of the judge pro tem ceased at the time he admitted the will to probate and that he had no jurisdiction to issue letters testamentary or to fix bond, or to act in other matters concerning the administration of the estate.

In the action now before us, Judge Gray pointed out that the reason for his prior disqualification had been resolved and he expressed the feeling he would not be biased or prejudiced in hearing the present motion. Our search of the record reveals nothing either

in Judge Gray's remarks or in his ruling on the motion for modification to suggest partiality or prejudice on his part. Accordingly, plaintiff's first point is not well taken.

We proceed to consider plaintiff's motion to modify the decree, itself, the first ground of which was to require the defendant to pay such extraordinary expenses of repair, maintenance and upkeep of the home as were necessary to preserve it. The trial court held this was an attempt by plaintiff to alter the property division previously adjudicated in the divorce action and held, further, that the court was without power or authority to change that portion of its decree. This ruling we believe to be correct.

K. S. A. 1968 Supp. 60-1610 (*b*) governs the disposition of property in a divorce action. It provides in pertinent part:

"The decree shall divide the real and personal property of the parties, whether owned by either spouse prior to marriage, acquired by either spouse in his or her own right after marriage, or acquired by their joint efforts, in a just and reasonable manner, either by a division of the property in kind, or by setting the same or part thereof over to one of the spouses and requiring either to pay such sum as may be just and proper, or by ordering a sale of the same under such conditions as the court may prescribe and dividing the proceeds of such sale."

This court has had no occasion to determine what power, if any, may be retained by a trial court under this statute with respect to property which has been divided, and property rights which have been settled, in a preceding divorce decree. The question has arisen, however, in actions where permanent alimony had been awarded in accordance with the provisions of a predecessor statute, G. S. 1949, 60-1511. In *Conway v. Conway*, 130 Kan. 848, 288 Pac. 566, the trial court awarded alimony to the plaintiff wife in an amount of $200 per month, together with the right to occupy the family residence as a home, expressly retaining jurisdiction to control and change the amount of alimony in the future. In a proceeding to modify the judgment this court, on appeal, held the alimony judgment to be void, and had this to say on the question of continuing jurisdiction:

"In framing the existing law, the legislature had distinctly in mind and expressly dealt with the subject of continuing jurisdiction. The regulation relating to settlement of property interests follows immediately after the regulation relating to custody and maintenance of children. Continuing jurisdiction to change any order relating to custody, support and education of children was granted. No such power was granted with respect to settlement of property

interests, and the omission is tantamount to express denial. The judgment for alimony is a final determination of the rights of the parties in respect to alimony. A court cannot give itself power by its own order to make future revisions of the merits of the judgment, and, of course, the parties to the action cannot confer such jurisdiction by agreement. (pp. 850, 851.)

. . . . . . . . . . . . .

"The district court had no power to reserve jurisdiction to modify either the money portion of the judgment or the portion relating to the real estate." (p. 852.)

The rule expressed in Conway was followed in cases involving alimony (see *Hinshaw v. Hinshaw,* 166 Kan. 481, 203 P. 2d 201; *Henderson v. Henderson,* 194 Kan. 456, 399 P. 2d 877) until, in 1963, the legislature changed the existing law with respect to alimony. K. S. A. 1968 Supp. 60-1610 (*c*) enacted at that time, now governs the allowance and payment of alimony. Among other major changes effected in the realm of alimony by this statute is the provision which authorizes the court to modify the amounts or conditions for payment of alimony originally awarded, but not yet due, except that no modification may be made without the consent of the obligor which would effect an increase or acceleration of liability for unpaid alimony beyond that prescribed in the original decree.

It is significant that while the statute expressly authorizes the court, upon notice and hearing, to modify the original award of alimony, subject, of course, to the limitation therein set out, there is no comparable authority granted with respect to that part of a divorce decree which relates to an award or division of property. This omission can be construed only as a deliberate legislative design to withhold from a trial court the power to modify its original decree as to property rights or division of property. Had the legislature intended to vest the court with continuing jurisdiction in matters of property, as well as alimony, we must presume it would have made similar provisions as to both.

Plaintiff directs attention to the provision in K. S. A. 1968 Supp. 1610 (*a*) empowering the court to set aside such part of the family property as seems needed for support of the children. That section of the statute has no relevance here. The decree gave *plaintiff* sole possession until September 6, 1969, when the home might be sold and the proceeds equally divided. It is clear this portion of the decree was not framed under the above provision but was part and parcel of the property division decreed when Mrs. Flannery was granted the divorce.

We are forced to conclude the trial court was without power to compel Mr. Flannery to pay for repairs to the house, since the original decree imposed that expense on Mrs. Flannery. This result is inescapable even though the property may be deteriorating rapidly, to the probable detriment of both parties.

No purpose would be served in detailing the evidence relating to the question of increased child support. It is sufficient to say that both sides had their day in court and that both plaintiff and defendant testified at length. The trial court was apprised not only of the needs of Mrs. Flannery and her two sons, one of whom attends St. John's University at his father's expense, but of the current resources and financial obligations of Mr. Flannery, as well.

From a review of the evidence in its entirety we cannot say the trial court's action in refusing to increase child support was not based on substantial competent evidence, even though a different conclusion might have been supported. Our function on appeal is not to weigh conflicting evidence but to determine if the court's decision finds substantial support in the evidence. This rule is too firmly established to require lengthy citation. (See cases in 1 Hatcher's Kansas Digest (Rev. Ed.) Appeal and Error, §§ 502-508.)

Other matters argued by plaintiff have been examined and found to be without merit. The judgment of the court below is affirmed.