(566 P.2d 21)

No. 48,390

FEDERAL NATIONAL MORTGAGE ASSOCIATION, a Corporation, *Plaintiff,* v. PAT ELLIOTT, *Appellee,* and WICHITA INVESTORS GROUP, INC., *Appellant.*

Opinion filed May 27, 1977.

*John Callahan,* of Wichita, for the appellant.

*Roger Sherwood,* of Wichita, for the appellee.

Before ABBOTT, P.J., FOTH and SPENCER, JJ.

ABBOTT, J.: This appeal involves a dispute as to redemption rights between appellee and his ex-wife's successor in interest to real estate sold at a mortgage foreclosure sale.

The facts are not in dispute and are essentially as follows:

Appellee, Pat Elliott, and his then wife, Marguerite L. Elliott, owned a home in Wichita as joint tenants with the right of survivorship and not as tenants in common. On September 1, 1959, Pat and Marguerite mortgaged the home to Federal National Mortgage Association, a corporation.

Pat and Marguerite L. Elliott were divorced on September 12, 1974, by virtue of a decree entered in case No. D-32992 in the district court of Sedgwick County, Kansas. The court divided the property as required by statute and awarded the real estate as follows:

"IT IS FURTHER BY THE COURT CONSIDERED, ORDERED, AD-JUDGED AND DECREED that the absolute right of possession and occupancy of the home of the parties at 1621 Alta, Wichita, Kansas, legally described as Lot 6, Block 1, Louis Fourth Addition, be and is hereby granted to the plaintiff until such time as she may sell said home, remarry, die, or until such time as she shall vacate said home for a period of time longer than three (3) months. If, at any time, plaintiff desires to sell said home, she may do so and apply the proceeds toward the payment ·of the mortgage thereon, expenses of sale, and then divide the balance equally between the parties hereto; and at said time, defendant is hereby ordered to sign such deed as the plaintiff may require to effect said sale. At such time as plaintiff may remarry or vacate said home for a period of time longer than three (3) months, plaintiff shall sell said home under the conditions as set out above. Plaintiff shall assume the mortgage indebtedness on said home."

Marguerite remained in the family home but failed to make the mortgage payments. Federal National Mortgage Association filed this mortgage foreclosure action in June of 1975. Service was made on the Elliotts. Judgment was entered on September 17, 1975, for the unpaid amount of the mortgage plus interest. A sale of the real property was ordered and the following judgment entered concerning redemption rights:

"IT IS BY THE COURT FURTHER CONSIDERED, ORDERED, AD-JUDGED AND DECREED that in the event of foreclosure sale of the above described real property, the defendants Pat Elliott and Marguerite L. Elliott be and hereby are given the right to redeem said real property as by law provided, said period of redemption being hereby fixed at 6 months from the date of such sale.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"IT IS BY THE COURT FURTHER CONSIDERED, ORDERED, AD-JUDGED AND DECREED that in the event of foreclosure sale and the failure to redeem by the defendants Pat Elliott and Marguerite L. Elliott within 6 months from the date of such sale, the Sheriff of Sedgwick County, Kansas, be and he is hereby directed to make to the holder of the Certificate of Purchase at said

Sheriff's sale a valid Sheriff's Deed conveying said real property to such holder."

The foreclosure sale was held on October 29, 1975. Appellant, Wichita Investors Group, Inc., was high bidder at the sale with a bid of $9,100. After the sale, but on the same day as the sale, Wichita Investors Group, Inc., paid $200 to Marguerite L. Elliott as consideration for a quitclaim deed and assignment of redemption rights which read:

"KNOW ALL MEN BY THESE PRESENTS, That the undersigned Marguerite L. Elliott, for value received, the receipt and sufficiency of which is hereby acknowledged, do hereby transfer, set over, convey, quit claim and assign unto Wichita Investors Group, Inc. all of Assignors right, title and interest and the equity of redemption owned by Assignor in and to the following described real estate, to-wit:

Lot 6, Block 1, in LOUIS FOURTH ADDITION, more commonly know [sic] as 1621 E. Alta, Wichita, Sedgwick County, Kansas.

"Assignor warrant's [sic] that she is of the record part owner of said real estate prior to the above entitled foreclosure equity of redemption and has the legal authority to make and deliver this instrument.

"EXECUTED THIS 29 day of October, 1975"

On November 6, 1975, the order of confirmation of sale was approved, and it provided "the period of redemption for the defendant-owners Pat Elliott and Marguerite L. Elliott has been fixed at 6 months from the date of said sale, or from October 29, 1975."

Wichita Investors Group, Inc., on January 16, 1976, as the assignee of Marguerite L. Elliott's redemption rights, paid the clerk of the district court of Sedgwick County the sum of $9,389.57. The clerk of the district court then paid Wichita Investors Group, Inc., as the holder of the certificate of purchase, the identical sum. Although the transaction was largely a paper transaction, moving money from one pocket to another in the same owner's trousers, it is important to note Wichita Investors Group, Inc., at this point is out of pocket the sum of $9,100 it paid for the property at the sheriff's sale.

Pat Elliott attempted to redeem the property and Wichita Investors Group, Inc., asserted sole ownership of the real estate. As a result, Pat Elliott, on February 24, 1976, well within the six-month redemption period, filed a motion in this case requesting that the trial court determine his redemption rights. The trial judge granted Elliott the exclusive right to redeem the property by an order dated March 5, 1976, which reads in pertinent part:

"The Court after being duly advised in the premises, finds that the defendant, Pat Elliott, has the right to redeem from Wichita Investors Group, Inc. by payment of the sum of $9,100.00 as the price paid at the Sheriff's sale, $200.00 as the price paid to defendant Marguerite Elliott, interest from October 29, 1975 at the rate of 5¼ percent on the principal sum of $9,300.00, insurance, taxes or other costs as provided in K.S.A. 60-2414, and that payment of such amounts to redeem the aforedescribed real estate shall be done in no event later than April 29, 1976.

"IT IS THEREFORE BY THE COURT CONSIDERED, ORDERED, ADJUDGED, AND DECREED that defendant, Pat Elliott, shall have the right to redeem from Wichita Investors Group, Inc., Lot 6, Block 1 in Louis Fourth Addition, Sedgwick County, Kansas, at any time on or before April 29, 1976.

"IT IS FURTHER BY THE COURT CONSIDERED, ORDERED, ADJUDGED, AND DECREED that upon the payment to the Clerk of the District Court by defendant, Pat Elliott, of the redemption amounts as hereinbefore set forth, on or before April 29, 1976, the Sheriff of Sedgwick County, Kansas, shall not deliver a Sheriff's deed to Wichita Investors Group, Inc., and that upon such payment, all right, title and interest of Wichita Investors Group, Inc., to Lot 6, Block 1, Louis Fourth Addition, Sedgwick County, Kansas, shall thereupon terminate."

Pat Elliott redeemed the property, and this appeal by Wichita Investors Group, Inc., followed. Marguerite L. Elliott and Federal National Mortgage Association, a corporation, did not appeal and make no appearance on the appeal.

Basically, appellant argues that the district court erred in granting Pat Elliott the exclusive right to redeem the property and terminating all rights of the appellant upon redemption by Pat Elliott. Appellant's main argument is that the property rights of Pat Elliott and his ex-wife were determined in the divorce decree; that none of the parties to the divorce appealed, and the court in the mortgage foreclosure case cannot change the property rights determined in the divorce case; that Marguerite was given the right of sale; and that at best appellee is entitled only to one-half of the $200 appellant paid to Marguerite for her quitclaim deed and assignment of her equity of redemption.

Appellee argues Pat Elliott "had one-half ownership in the property as a joint tenant with right of survivorship," that his ex-wife was ordered to make the payments and did not, that it would be inequitable to have Pat Elliott become a joint tenant with the corporation and that it would be equitable to allow Pat Elliott to redeem the real estate and become the sole owner.

Appellee further argues that appellant cannot have better title than Marguerite's as a result of the assignment and quitclaim deed from Marguerite to appellant. The basis of this argument is

that in June of 1976, some eight months after Marguerite gave the assignment and quitclaim deed and several months after this appeal had been commenced, appellee's counsel and counsel for Marguerite appeared before the district court in the original divorce action. The divorce court ruled that Marguerite's interest in the real estate had terminated because of her failure to make the mortgage payments. We are advised that on oral argument no notice was given to counsel for appellant, and the trial judge in the divorce case was not informed of the mortgage foreclosure action. The argument was not presented to the trial court. We reject the argument for numerous reasons so obvious that they require no discussion or citations.

Appellant chose not to brief his points separately. In passing, we note appellant cites but one authority in his brief, and that authority is not relevant to any material issue in the case.

The Elliotts owned the property as joint tenants with right of survivorship and not as tenants in common prior to the commencement of the divorce action. A joint tenancy depends upon the coexistence of four requirements, namely, interest, title, time and possession. A joint tenancy may be terminated by mutual agreement of the joint tenants or by operation of law when any one or more of the necessary elements of joint tenancy are destroyed. (*Carson, Executrix, v. Ellis,* 186 Kan. 112, 348 P.2d 807; *Baade v. Ratner,* 187 Kan. 741, 359 P.2d 877.) In *Carson* and *Baade,* the Supreme Court recognized that the parties could mutually agree to terminate a joint tenancy by a property settlement agreement inconsistent with the elements of joint tenancy without expressly stating they were terminating the joint tenancy. In *Carson,* the parties agreed to sell the real estate within sixty days and divide the net proceeds. The husband died and his ex-wife claimed all of the interest in the real estate as the surviving joint tenant. The court said in pertinent part at pp. 115-6 (omitting citations contained therein):

"A joint tenancy will be severed by the destruction of any one or more of its necessary units.

"It has also been held that a joint tenancy may be terminated by a mutual agreement between the parties, or by any conduct or course of dealing sufficient to indicate that all parties have mutually treated their interests as belonging to them in common.

". . . These contracts and the acts and conduct of the parties were clearly inconsistent with the existence of a joint tenancy and indicated an intention and agreement that such relationship should no longer exist. . . ."

The court considered the effect the divorce decree had on joint tenancy property and found that the divorce decree operated to sever the unity of possession, stating at pp. 116-7:

"Did the decree of divorce sever the joint tenancy? G.S. 1949, 60-1511 provides, in part, that when a decree of divorce is granted to the wife by reason of the fault of the husband, the court *shall make a division* of the real and personal property as shall have been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of the parties. It is clear that the object of the statute, in case a divorce is granted, is to settle all rights between the parties and sever the interests of the husband and the wife so as to vest in each a sole interest in specific property or an allotment of the lands and tenements. The divorce decree has the effect of severing the unity of possession between a husband and wife. In other words, that which was a joint possession is turned into a several one. The decree of divorce definitely fixed the rights of the parties in the real estate by ordering the property sold and the proceeds divided in accordance with the decree. It was a final judgment from which no appeal was taken. The fact that sale of the property had not been made prior to the death of Mr. Ellis is immaterial. The decree operated to sever the unity of possession."

We have no difficulty concluding that when a divorce decree grants possession of real estate to one of the joint tenants until that tenant sells the home, remarries, dies, or vacates the realty for over three months, and the decree provides that upon remarriage, vacation of the realty, or desire to sell on the part of the occupying tenant the other tenant join in the deed and the net proceeds of the sale be divided equally between them, such provisions operate to terminate the joint tenancy and to create a tenancy in common by operation of law.

We further note that Marguerite L. Elliott conveyed her interest in the property by quitclaim deed to appellant after the sheriff's sale which in itself would have severed the joint tenancy. A joint tenant can convey his or her interest in realty to a third party, and that conveyance will terminate the joint tenancy. *(Berry v. Berry,* 168 Kan. 253, 212 P.2d 283.)

Pat Elliott and his ex-wife were cotenants in the realty as a result of the divorce decree. Marguerite L. Elliott had conveyed her interest in the property to appellant prior to the date of the court order granting Pat Elliott the exclusive right to redeem the property and thereby terminating any right of appellant in the property. The district court erred in its order. The divorce decree effectively terminated the joint tenancy. No appeal was taken from the divorce decree and it was a final order. The law is well

settled in Kansas that "[w]here matters concerning the disposition and division of property and property rights are adjudicated and settled in a final divorce decree the trial court is thereafter without statutory authority to change, alter or modify the judgment with respect to the property so divided." *(Flannery v. Flannery,* 203 Kan. 239, 452 P.2d 846. See, also, *Drummond v. Drummond,* 209 Kan. 86, 495 P.2d 994, and *Wallace v. Wallace,* 214 Kan. 344, 520 P.2d 1221.) If the trial court which granted the divorce is without authority to change, alter or modify the original divorce decree with respect to the property divided therein, another court cannot do what the original court is prohibited from doing under the guise of equity in a mortgage foreclosure action. Appellant was the successor in interest to Marguerite L. Elliott's undivided one-half interest in the property, and the trial court could not terminate that interest nor frustrate her disposition of her one-half interest to appellant.

Appellant argues Marguerite L. Elliott had authority in the divorce decree to sell the property and that when she quitclaimed the property to appellant that terminated appellee's interest. We are not dealing with an innocent purchaser. Appellant was charged with constructive knowledge of the divorce decree at the time it solicited and accepted the quitclaim deed from Marguerite. The trial judge in the divorce action recognized Marguerite L. Elliott could not alone convey good title and required appellee to join in any deed conveying the premises. Certainly the trial court in the divorce action would not have required appellee to join in a deed when the property was not being transferred for adequate consideration. Appellant knew of Pat Elliott's right of redemption in the mortgage. Even more damaging to appellant's argument is the language found in the assignment and quitclaim deed whereby appellant obtained Marguerite L. Elliott's interest in the property and which was drawn by appellant stating, "Assignor warrant's [*sic*] that she is of the record <u>part owner</u> of said real estate  .  .  ." (Underscoring supplied.)

Appellant took only the interest of Marguerite L. Elliott in the realty and that was an undivided one-half interest. Pat Elliott owns the other one-half as a tenant in common. A tenant in common cannot redeem realty in a mortgage foreclosure action to the exclusion of a cotenant. Thus, a tenant in common who exercises his or her right of redemption does so not only for his or

her benefit, but also for the benefit of the cotenant regardless of the intent of the redeeming cotenant. The cotenant who did not redeem can participate in the redemption by contributing an amount that is commensurate with his proportionate share. *(Hayden v. Hughes,* 147 Kan. 511, 77 P.2d 938; *Rutland Savings Bank v. Norman,* 125 Kan. 797, 266 Pac. 98.)

Reversed, with direction for the trial court to allow redemption in accordance with this opinion.