(752 P.2d 690)

No. 60,440
No. 60,705

EDWARD NEAL ROBERTSON, guardian and conservator of Ida Ludwig, *et al.*, *Appellants*, v. DENNIS LUDWIG and ELVIRA FISHER, *et al.*, *Appellees*.

Opinion filed March 24, 1988.

*Elizabeth A. Carson*, of Carson & Fields, of Overland Park, for the appellants.

*Larry Benson* and *Laurence M. Jarvis*, of Laurence M. Jarvis, Chartered, of Kansas City, for the appellees.

Before BRISCOE, P.J., SIX and LARSON, JJ.

BRISCOE, J.: Edward Neal Robertson, who is the guardian and conservator of his mother Ida Ludwig, appeals the district court's dismissal of his action to recover funds withdrawn from joint tenancy accounts.

Paul and Ida Ludwig were husband and wife for 33 years. Edward, plaintiff in this action, is Ida's son by a previous marriage. Dennis Ludwig and Elvira Fisher, defendants in this action, are Paul's children by a previous marriage.

In August 1985, the health of both Paul and Ida began to decline. Ida was diagnosed as having senile dementia and, therefore, incapable of handling her business affairs. In October 1985, Ida was placed in a nursing home and Paul moved in with his daughter Elvira.

Paul and Ida held their life savings in three joint tenancy accounts at Argentine Savings and Loan Association (Argentine). Two of these accounts were certificates of deposit (accounts No. 10588 and No. 845) and one was a passbook account (account No. 174). The signature cards for accounts 845 and 174 indicate Paul and Ida signed as "owners (grantors)."

On August 9, 1985, Paul and his son Dennis went to Argentine Savings and Loan Association and Paul instructed an employee of Argentine to add the names of Dennis and Elvira to the joint tenancy accounts. The names of Dennis Ludwig and Elvira Fisher were typed on the signature card and certificate of deposit for account 10588 and on the signature card and passbook for account 174. New cards were not made out. Dennis signed the signature cards for both accounts. Elvira signed the cards later and returned them to Argentine. The names of Dennis and Elvira were typed on the certificate of deposit for account 845.

Employees of Argentine testified that a new signature card was prepared for account 845 and that Dennis and Paul signed it. Elvira testified she signed and returned the signature card to Argentine. This new signature card for account 845 could not be located and was not produced at trial. Only the original signature card bearing Paul's and Ida's signatures was produced.

The signature cards for accounts 174 and 845 provided:

"SPECIFIC CONDITIONS FOR JOINT ACCOUNTS: Ownership of this savings account is vested in the names appearing on the reverse side hereof, as joint tenants with the right of survivorship and not as tenants in common. It is understood that any one of the owners who shall first act shall have power to act in all matters related to this savings account whether the other owners be living or not."

The card for account 10588 included similar language. Paul, Ida, Dennis, and Elvira were named as the account holders on the face of the passbook and on both of the certificates of deposit. On all three accounts, their names were followed by the phrase "as joint tenants with the right of survivorship and not as tenants in common."

Two days before Paul's death on May 8, 1986, Dennis withdrew two-thirds ($18,249.32) of passbook account 174, which contained $28,237.06. On May 8, 1986, Dennis and Elvira withdrew all of the proceeds of account 10588 ($22,790.02) and then divided the proceeds into three equal checks of $7,596.67. Dennis and Elvira placed one of the checks in a certificate of deposit in the names of Ida Ludwig and Edward Robertson. On May 14, 1986, Dennis and Elvira delivered that certificate of deposit and the passbook for account 174, along with personal items belonging to Ida, to Edward. On May 23, 1986, Elvira withdrew all funds ($2,501.89) from account 845. On May 28, 1986, Edward was named guardian and conservator of his mother.

On June 6, 1986, Edward filed a petition against Argentine, Dennis, and Elvira, seeking imposition of a constructive trust on all monies derived from accounts 174, 10588, and 845, or judgment against the defendants. Edward alleged that the names of Dennis and Elvira were added without authority; that monies were withdrawn from the accounts without authority; that the monies in the accounts were largely the result of Ida's contribu-

tions; and that Paul's will superseded such illegal contracts. The court granted an ex parte restraining order impounding the funds derived from the accounts. Edward filed an amended petition, alleging the joint tenancy accounts were not entered into with the consent of all parties and that Ida was incapable of consenting to the creation of the accounts.

Defendants filed an amended answer and counterclaim, alleging that, after Paul's death, Edward and the defendants entered into a settlement by which the funds in the joint accounts were divided. Defendants claimed Edward breached the agreement by bringing this action. Edward moved to amend his petition for a second time, alleging fraud, mutual mistake, and severance of the joint tenancy by the addition of Dennis' and Elvira's names on the accounts. Nadine Wright, the named executrix of Paul's will, moved to stay the proceedings and be added as a party plaintiff. She asked the court to order counsel for defendants to deliver the original copy of the will to her so she could obtain her appointment as executrix. Nadine's motion to intervene and to stay the proceedings was denied.

On the day of trial, Edward moved to strike defendants' trial brief and for sanctions. The court denied the motion to strike and for sanctions and the motion to amend his petition for a second time. Edward also moved for voluntary dismissal of Argentine as a defendant in the case. The motion to dismiss Argentine was granted and the trial proceeded. At the close of Edward's case, defendants moved for a directed verdict and an order setting aside all restraining orders. The court first sustained both motions as to accounts 174 and 10588. Then, after the continuance of the trial to a later date to hear additional evidence, the court also sustained both motions as to account 845. Defendants' counterclaim was dismissed.

The district court granted defendants' motion for involuntary dismissal of Edward's claim as to accounts 174 and 10588 on two different theories. First, the court found Edward had acquiesced in the division of the accounts by accepting and not paying over to Paul's estate the one-third split. Second, the court found Ida and the defendants were joint tenants with equal ownership, and the division of the accounts fairly represented this equal ownership. As to account 845, the court found by the preponderance of

the evidence that Paul intended to make Elvira a cotenant on the account with himself, Ida, and Dennis. Elvira was ordered to pay each of her cotenants one-third of the account.

The court found the addition of defendants' names to accounts 174 and 10588, along with their signatures on the signature cards for these accounts, created an enforceable contract by which defendants, Paul, and Ida became joint tenants with the right of survivorship with identical interests in the accounts. Following Paul's death, the joint tenancy continued under the terms of the contract with each party possessing the power to dispose of the funds in each account under the terms of the contract. The court found, however, that it had the power to impose a constructive trust on the funds to avoid unjust results. The division of accounts 10588 and 174 into equal shares among the joint tenants made the imposition of a constructive trust unnecessary. However, once it found the parties were cotenants as to account 845, the court imposed a constructive trust on proceeds from the account and ordered Elvira to pay equal shares to Edward and Dennis.

### Effect of addition of names to existing joint tenancy account by one joint tenant without the consent of the other joint tenant.

#### (a) Is a new joint tenancy created?

On appeal, Edward contends the addition of defendants' names to the three accounts did not create a joint tenancy among Paul, Ida, and defendants. Edward argues Ida's consent was necessary for the creation of a joint tenancy among Ida and the defendants. The parties agree that Ida did not consent to the addition of defendants' names to the accounts and, further, that she was not competent to consent. Defendants argue that Ida's consent was not necessary to create a joint tenancy among the parties.

The distinctive characteristic of a joint tenancy is the right of survivorship. Upon the death of one of the joint tenants, the property descends to the survivor or survivors. The right of survivorship terminates only when the entire estate, without the tenants having disposed of their title or otherwise terminating the tenancy, comes into the hands of the last survivor. *Johnson v.*

*Capitol Federal Savings & Loan Assoc.*, 215 Kan. 286, 291, 524 P.2d 1127 (1974).

Although the presumption of joint tenancy with the right of survivorship as it existed under the common law has been abolished by statute (K.S.A. 58-501), a valid joint tenancy may be created by a contractual arrangement which confers equivalent legal rights and obligations upon the parties concerned. *In re Estate of Smith*, 199 Kan. 89, 93, 427 P.2d 443 (1967) (citing *Malone v. Sullivan*, 136 Kan. 193, 14 P.2d 647 [1932]). K.S.A. 58-501 requires that the language used in such a grant clearly indicates a joint tenancy is intended. *In re Estate of Smith*, 199 Kan. at 93.

K.S.A. 58-501 provides in pertinent part:

"Real or personal property granted or devised to two or more persons including a grant or devise to a husband and wife shall create in them a tenancy in common with respect to such property unless the language used in such grant or devise makes it clear that a joint tenancy was intended to be created . . . . Where joint tenancy is intended as above provided it may be created by:

"(a) Transfer to persons as joint tenants from an owner or a joint owner to himself or herself and one or more persons as joint tenants."

In determining whether a joint tenancy account is created, general contract principles are applied. *In re Estate of Powell*, 222 Kan. 688, 690-91, 567 P.2d 872 (1977); *Eastman, Administrator v. Mendrick*, 218 Kan. 78, 82, 542 P.2d 347 (1975); *Smith*, 199 Kan. 89, Syl. ¶ 1. A joint tenancy account is created when the depositor signs a signature card naming himself and another "as joint tenants with right of survivorship and not as tenants in common." *Johnson*, 215 Kan. at 290 (quoting *Edwards v. Ledford*, 201 Kan. 518, 524, 441 P.2d 834 [1968]). These "magic words" meet the clarity requirement of K.S.A. 58-501 and create an enforceable written contract. *Johnson*, 215 Kan. at 290; *Edwards*, 201 Kan. at 524. The provisions of the signature card constitute a contract in writing between the depositor and the bank, enforceable according to its terms, and a parol understanding at variance with such terms is inadmissible in the absence of fraud or mutual mistake. *Powell*, 222 Kan. at 690-91; *Eastman*, 218 Kan. at 82; *Johnson*, 215 Kan. at 290; *Edwards*, 201 Kan. at 524-25.

Under common law, "four unities" had to be present to create a joint tenancy: (1) interest—the tenants must have one and the same interest; (2) title—the interests must accrue by one and the same instrument or conveyance; (3) time—the interests must commence at one and the same time; and (4) possession—the property must be held by one and the same undivided possession. If any one of these unities is lacking, the estate is not one in joint tenancy. *Simonich, Executrix v. Wilt,* 197 Kan. 417, 421, 417 P.2d 139 (1966). Joint tenancy bank accounts created by contract have been held to satisfy the requirements of the "four unities." *Edwards,* 201 Kan. at 526; *Simonich,* 197 Kan. at 424.

Here, only the signature cards for accounts 174 and 10588 contained the additional signatures of Dennis and Elvira. The court heard testimony concerning the addition of their signatures to the signature card for account 845. The signature cards for accounts 174 and 10588 which were admitted clearly stated the accounts were held in joint tenancy with right of survivorship. The parties do not dispute that Paul directed a bank employee to add the defendants' names to all three accounts and that, by this action, he intended to create a joint tenancy with the defendants on all three accounts. It is also undisputed that Ida, Paul's joint tenant, did not consent and was incompetent to consent to the addition of the defendants' names.

K.S.A. 58-501(a) states that a joint tenancy may be created by a transfer "to persons as joint tenants from an owner or a joint owner to himself or herself and one or more persons as joint tenants." Pursuant to K.S.A. 58-501(a), Paul as a joint owner could have withdrawn all of the monies from the accounts and set up a new account with defendants as joint tenants. As a party to a joint tenancy account, Paul has a complete right of disposal. *Walnut Valley State Bank v. Stovall,* 223 Kan. 459, 460, 574 P.2d 1382 (1978). Had Paul set up a new account, Ida could have then sought imposition of a constructive trust. See *Walnut Valley State Bank,* 223 Kan. at 460-61.

In the present case, Paul did not withdraw all of the monies from the accounts and set up a new account with the defendants as joint tenants. Instead, he attempted to work within his and Ida's existent joint tenancy to create a new joint tenancy which included the defendants. We conclude that without the consent

of his joint tenant he cannot unilaterally add parties to the existent joint tenancy. The effect of Paul's action was to force Ida into a contract to which she did not consent. As stated in *Johnson*, 215 Kan. at 290, the creation of a joint tenancy account requires the signature of the depositor on the signature card, naming himself and another (or others) as joint tenants. In the present case, it is undisputed that both Paul and Ida were the "depositors" in the existing accounts. They were explicitly so designated on the signature cards of two of the accounts. As a depositor in these existing accounts, Ida's consent would be required to create a joint tenancy among Paul, Ida, and the defendants in these existing accounts.

The "four unities" recognized at common law to create a joint tenancy are absent here. Clearly, the unity of time is not present. The interests of the parties did not commence at one and the same time. Ida's interest in the accounts commenced when she and Paul opened the accounts. The creation of the new joint tenancy among Paul and the defendants was not initiated until 1985.

Defendants argue Paul had the right to dispose of his personal property throughout his lifetime and, therefore, he did not need Ida's consent to add the defendants to the accounts. The cases cited by defendants, however, concern property held separately by a person who then creates joint tenancies or trusts, placing the property beyond the reach of a spouse. See *Eastman*, 218 Kan. 78; *Winsor v. Powell*, 209 Kan. 292, 497 P.2d 292 (1972). In this case, there is no evidence that the funds belonged solely to Paul. To the contrary, by placing them in the account, it is presumed that Ida owned an undivided interest equal to that of Paul. *In re Estate of Shields*, 1 Kan. App. 2d 688, 692, 574 P.2d 229 (1977), *aff'd* 224 Kan. 604, 584 P.2d 139 (1978).

In *Walnut Valley State Bank v. Stovall*, 223 Kan. 459, the court considered the power of a creditor to garnish a joint tenancy account. In determining how much of the account could be garnished, it was necessary to determine the "interest of a judgment debtor." 223 Kan. at 461. The court held there is a rebuttable presumption of equal ownership between tenants of joint tenancy property based upon a theory of donative intent. Each party is presumed to donate one-half of the deposits to the

other joint tenant. The presumption may be rebutted by evidence of ownership in some other proportion. 223 Kan. at 462-63.

Here, the record contains no evidence which would rebut the presumption of equal ownership. Furthermore, the signature card for account 10588 contains language which expressly provides that any funds placed in the account by one of the parties is "intended as a gift to the other signatory parties to the extent of his or their pro rata interest in the account." The signature cards for accounts 174 and 845 contain no such language. By presumption of law in accounts 174 and 845 and in the case of account 10588 by express contract, Ida and Paul were equal owners of the joint tenancy accounts.

### (b) Is severance the result?

If Paul could not validly create the second joint tenancy account among Ida, the defendants, and himself, what is the effect of his attempt to do so? Edward makes two alternative arguments. First, he argues the addition of the names had no effect so Ida succeeds to the entire amount in the accounts by survivorship. Second, he argues the addition of the names severs the joint tenancy between Paul and Ida, creating a tenancy in common. Edward then argues Paul's one-half interest would become part of Paul's estate. Edward cites Kansas cases which hold that, upon a joint tenant's inter vivos conveyance of his interest in real estate, the joint tenancy is severed and a tenancy in common is created. *Hall v. Hamilton*, 233 Kan. 880, 882-85, 667 P.2d 350 (1983); *Berry v. Berry*, 168 Kan. 253, 212 P.2d 283 (1949); *Federal National Mortgage Ass'n v. Elliott*, 1 Kan. App. 2d 366, 370, 566 P.2d 21 (1977).

*Walnut Valley State Bank*, 223 Kan. 459, is instructive, although factually different from the present case. *Walnut Valley* involved garnishment of a joint tenancy bank account by a judgment creditor of one of the joint tenants. The joint tenants were husband and wife. The court concluded the garnishment severed the joint tenancy and created a tenancy in common. The severance of the joint tenancy into a tenancy in common gave rise to a rebuttable presumption of equal ownership; that is, the husband and wife each owned one-half of the account. 223 Kan. at 462.

Just as a garnishment severs the joint tenancy, so may an inter vivos action of one joint tenant cause a severance of the joint tenancy. In *In re Estate of Shields*, 1 Kan. App. 2d 688, this court was asked to determine what interest a joint tenant succeeds to after he murders the other joint tenant. Our court held that, when one joint tenant murders the other, the joint tenancy is severed and a tenancy in common results. The murderer does not take the whole as a survivor, but is entitled to a one-half interest, with the heirs of the victim taking the remaining one-half interest.

Other jurisdictions have considered the effect of withdrawal of funds from joint tenancy accounts or the changing of names on accounts. Some have found such action terminates the tenancy (*Kacirek v. Mangan*, 489 P.2d 342 [Colo. App. 1971]; *In re Wright Estate*, 156 Mich. App. 1, 401 N.W.2d 288 [1986]), while others hold it does not (*Matter of Estate of Morrow*, 91 N.M. 81, 570 P.2d 912 [1977]). Those courts holding that name changes on the account sever the joint tenancy usually view such changes as equivalent to withdrawal of the funds and opening a new account.

We conclude Paul's action severed his joint tenancy with Ida. Like the husband and wife in *Walnut Valley State Bank* and in *In re Estate of Shields*, Paul and Ida each retain a one-half interest in the funds. As regards Paul's one-half interest, Paul did intend that defendants should receive his interest in joint tenancy. The signature cards for accounts 174 and 10588 are contracts which establish that intent. As regards account 845, the defendants' names were placed on the certificate of deposit and the "magic words" establishing joint tenancy followed their names. Parol evidence further established Paul's intent that defendants should receive his interest in account 845 in joint tenancy. We conclude defendants are joint tenants in Paul's one-half interest as regards all three accounts.

### Acquiescence.

In dismissing Edward's action, the district court held he acquiesced in the division of funds by accepting and not paying over to Paul's estate the funds he received. Although the court does not cite authority to explain its finding, defendants suggest

the court's finding is based upon principles of equitable estoppel.

The doctrine of equitable estoppel requires consistency of conduct. A litigant is estopped and precluded from maintaining a position regarding a transaction wholly inconsistent with his previous acts in connection with that same transaction. *Browning v. Lefevre*, 191 Kan. 397, 400, 381 P.2d 524 (1963). Arguably, Edward accepted and retained the benefits of the division of the funds, thus precluding his claim to the remainder of the funds. However, Edward's main contention throughout this litigation has been that Ida is entitled to all of the funds as survivor. He only argues in the alternative that the funds should pass to Paul's estate because of severance of the joint tenancy. We conclude that Edward's acceptance of the funds offered by defendants is not so inconsistent with his position that he should be prevented from bringing this action.

## Pretrial Reading of Deposition.

Edward also contends the trial court erred in reading his deposition and in denying his motion to strike defendants' trial brief which contained portions of the deposition testimony. Edward bases his contention upon the fact that the deposition had not been admitted into evidence when it was read by the court. We find no error.

Edward does not state what prejudice he suffered as a result of the court's reading of his deposition. The record indicates the court did read the deposition in an effort to understand Edward's pleadings and proof before commencement of the trial to the court. At trial, the court heard Edward's evidence and then granted defendants' motion for involuntary dismissal because Edward had failed to prove his claim. As regards the deposition testimony, Edward does not state that the court's decision to dismiss would have been altered in any way had it not read the deposition.

## Denial of Motion to Amend Petition.

Edward contends the trial court erred in refusing to allow the amendment of his petition for a second time. Edward moved to amend his petition on September 29, 1986, to allege fraud, mutual mistake, and severance of the joint tenancy by the addi-

tion of defendants' names on the accounts. As a result, he alleged proceeds of the accounts should be paid into Paul's estate. The court denied the motion on October 2, 1986, the day of trial. K.S.A. 60-215(a) provides:

"A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty (20) days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

Whether an amendment will be allowed is within the broad discretion of the trial court. See *Dutoit v. Board of Johnson County Comm'rs*, 233 Kan. 995, 1002-03, 667 P.2d 879 (1983).

Here, the amended petition included new claims of fraud and mutual mistake. Defendants would suffer undue prejudice if the court required them to defend against these additional claims, which were made only three days before trial. Given the prejudice to defendants were these belated claims allowed and Edward's delay in asserting these claims until three days before trial, we cannot conclude the court abused its discretion in denying Edward's motion to amend his petition.

### Denial of Motion to Intervene by Executrix.

The next issue is raised in Nadine's appeal from the trial court's order denying her motion to intervene in Edward's action. Nadine's appeal was consolidated with Edward's appeal. Nadine, named as Paul's executrix, filed a motion to intervene on September 29, 1986, three days before trial. Counsel for Edward argued the motion of Nadine to intervene. The court ruled on the motion on November 10, 1986, the day of trial on account 845. The court denied Nadine's intervention and, in support of its finding, stated the executrix of the estate was not in existence at the time of trial.

Edward argues the court erred in not naming Nadine as a party. He argues she was a necessary party because, if the joint tenancy between Paul and Ida was severed, the executrix was a necessary party to garner funds into the estate. Defendants argue Nadine did not properly and timely move to intervene and further that this appeal is not timely.

Denial of a motion to intervene is a final order under K.S.A. 1987 Supp. 60-2102(a)(4). *Campbell American Legion v. Wade*, 210 Kan. 537, 502 P.2d 773 (1972). An appeal must be filed within 30 days of entry of judgment. K.S.A. 60-2103(a). Judgment is entered when a journal entry or judgment form is filed. K.S.A. 60-258.

Here, the journal entry, which included the judgment denying Nadine's intervention, was not filed until March 27, 1987. Notice of appeal was filed on April 2, 1987, within the period prescribed by K.S.A. 60-2103(a).

Although Nadine concedes that she was not the executrix when she filed her motion, she contends counsel for defendants prevented her appointment by his refusal to deliver the original will to her. The record shows defense counsel was ordered to deliver the will the first day of trial, and again on the second day. According to the court, Nadine did not receive her letters testamentary until November 10, 1986. This was after the court had ordered involuntary dismissal against Edward on all but account 845. Nadine also failed to attach to her motion the pleading required by K.S.A. 60-224(c)(1), *i.e.*, "a pleading setting forth the claim or defense for which intervention is sought."

"Whether a motion to intervene is allowed is normally a matter of judicial discretion. [Citation omitted.] It depends upon the *concurrence* of three factors: (1) Timely application; (2) a substantial interest in the subject matter; and (3) lack of adequate representation of the intervenor's interests. [Citation omitted.]" *American States Ins. Co. v. Hartford Accident & Indemnity Co.*, 218 Kan. 563, 573, 545 P.2d 399 (1976). (Emphasis added.)

The trial court was correct in refusing to add Nadine as a necessary party as she had not yet received her letters testamentary and did not comply with 60-224(c)(1) by filing an accompanying pleading. We find no abuse of discretion.

## Defense Counsel's Conduct Did Not Deny Edward A Fair Trial.

Edward's final issue concerns nine allegations of misconduct by defense counsel which he contends prevented him from obtaining a fair trial.

Remarks and misconduct of counsel constitute reversible error when, because of them, the parties have not had a fair trial. A fair trial requires an adequate hearing before an impartial tribunal based on legally admissible evidence relevant to the issues

involved, free from bias or prejudice. On appeal, reversible error will not be considered when based on misconduct of counsel unless objection is made in the trial court. An exception is made if counsel's conduct permeates the entire proceeding and ˙was part of the trial strategy. See *Smith v. Blakey, Administrator*, 213 Kan. 91, 515 P.2d 1062 (1973).

Edward candidly admits that objection ˙was not made in the trial court to all of the conduct we are now asked to review. We have, however, reviewed each of Edward's allegations concerning defense counsel's conduct. We conclude, whether each allegation of misconduct is considered individually or as a whole, Edward has failed to establish that defense counsel's conduct deprived him of a fair trial.

Reversed and remanded with directions to award Ida one-half of the proceeds from the three accounts; the remaining one-half of the proceeds is to be awarded to defendants as joint tenants.